[No. B056828. Second Dist., Div. Five. Mar. 16, 1992.]

ERNEST P. BROWNELL III, a Minor, etc., Plaintiff and Respondent, v. LOS ANGELES UNIFIED SCHOOL DISTRICT, Defendant and Appellant.

## COUNSEL

Hamrick & Garrotto and Charles H. Carpenter for Defendant and Appellant.

Harold V. Sullivan II and Ronald E. Hermanson for Plaintiff and Respondent.

## OPINION

**BOREN, J.**—The Los Angeles Unified School District (LAUSD) appeals following a $120,000 jury verdict arising from an incident in which a student, Ernest P. Brownell III, was shot and wounded by gang members. The shooting occurred immediately after school hours and on a public street adjacent to school property. Brownell alleged negligent supervision in that LAUSD personnel had dismissed the students after school without first ascertaining if the street in front of the school was free of any gang members.

In somewhat related contentions, LAUSD asserts that (1) the trial court erred in denying its motion for judgment on the pleadings because the claim for damages, filed pursuant to provisions of the claims statute (Gov. Code, § 910 et seq.), failed to include a claim for negligent supervision, (2) no liability could ensue for a student's injury which occurred after school and off school premises, and (3) a claim of negligent supervision cannot prevail where LAUSD satisfied its duty of reasonable care to protect against known or reasonably foreseeable risks where the school had no indication prior to the students' dismissal after school that any gang-related incident was threatened or likely to occur. We agree with the last contention, and therefore reverse the judgment.[1]

## FACTS

After the school day ended on January 28, 1985, Brownell went out the main door of Johnson High School and stood in front of the school on the sidewalk along 42nd Street among a group of 15 to 20 people. He was listening to his Walkman radio and waiting for some friends with whom he was going to walk to a nearby bus stop. Among the group of people was another student, Keesha Pierson, who was herself waiting for some friends with whom she was going to walk home. At trial, Pierson testified as to the ensuing events. After Brownell had stood outside for approximately five minutes, several youths wearing red gang colors associated with the Bloods gang ran or walked quickly across the street and gathered around Brownell. One of the gang members swung at Brownell, causing him to go into the middle of the street where another gang member pulled out a gun and shot him.[2]

The incident happened very fast. The gang members were not in front of the school when Pierson or Brownell first came out of the school. Pierson had no idea during that day at school that there was going to be an incident like that after school.

Brownell, who had never been a member of a gang, was apparently shot because he was mistaken by members of the Bloods for a member of a rival gang, the Crips. Johnson High School is located in an area known as a Crips

[1]In view of the reversal, we need not address LAUSD's unrelated contentions that the trial court erred in failing to respond properly to an inquiry from the jury and applied the wrong standard in ruling on the motion for a new trial. Moreover, Brownell's request to impose sanctions for a frivolous appeal is, of course, denied.

[2]On appeal, Brownell contends he was first struck while standing between the school building and the sidewalk and that the jury could reasonably infer from the evidence that the assault started on premises controlled by LAUSD. However, we do not so read the record and, in any event, such a factual dispute is not determinative of the appeal.

neighborhood. Before Brownell was shot, a gym teacher at the high school told Brownell and other class members about an altercation at the school which had occurred at some unspecified time and involved one of Brownell's attackers, Lymus Ali, and another student. Ali had told the teacher that "he can't come to the school no more because there's some Crips here, and that he was a Blood." Ali had only been a student at Johnson High School for one or two days when he was threatened and told the gym teacher he could no longer attend the school. The member of the Bloods who shot Brownell, Douglas Smith, was not a student at Johnson High School, and Brownell had never encountered Smith before Smith shot him.

At the time Brownell was shot, he and the other students had been dismissed from school for the day. Mary Maddox, dean and counselor at Johnson High School, and Wilma Manyweather, the principal of the school, were inside the school near the doors passing out bus tickets to the students. They normally gave out the tickets at the school gate, but they did so inside the building that day because it was raining. On the day Brownell was shot, neither Maddox nor Manyweather had heard any rumors or threats to any of the students or detected any other indications of trouble. As Maddox explained, "Usually when something was about to happen [in such a small school] you could feel it all day long, and the kids would be whispering and stuff like that. But I don't recall any of that happening on that day."

Johnson High School had a population of approximately 200 students. The students at Johnson High School were referred there from other high schools where they had had behavior problems, such as inability to get along with other students, truancy, destructiveness in the classroom, and involvement in gang-related activities. The school had no school police or security guards, but had campus aides who could contact the school administrators off-campus or school police by walkie-talkie. It was the policy of the school to prohibit the display on campus of gang colors and paraphernalia associated with gangs. During 1985, the year Brownell was shot, the school removed such gang-related items from students on almost a daily basis and also on occasion confiscated weapons from students. There had been no prior shootings at Johnson High School.

## Discussion

### I. *Motion for Judgment on the Pleadings Based on the Claims Statute*

In ruling on a motion for judgment on the pleadings, as in the case of a general demurrer, the court is confined to the facts alleged in the pleading attacked. (*Sullivan* v. *County of Los Angeles* (1974) 12 Cal.3d 710, 714, fn. 3

[117 Cal.Rptr. 241, 527 P.2d 865].) A motion for judgment on the pleadings may be made at any time, whether before or at trial, as long as the motion is made before final judgment is rendered. (*Tiffany* v. *Sierra Sands Unified School Dist.* (1980) 103 Cal.App.3d 218, 224 [162 Cal.Rptr. 669]; *Shabrick* v. *Moore* (1961) 195 Cal.App.2d 56, 59 [15 Cal.Rptr. 310].) A motion for judgment on the pleadings, like a general demurrer, challenges the sufficiency of the plaintiff's cause of action and raises the legal issue, regardless of the existence of triable issues of fact, of whether the complaint states a cause of action. (*Donohue* v. *State of California* (1986) 178 Cal.App.3d 795, 802 [224 Cal.Rptr. 57].)

LAUSD moved for judgment on the pleadings on the ground, in essence, that the complaint failed to state a cause of action because it alleged, as the basis for liability, facts not set forth in the written claim presented to and rejected by LAUSD. The claim filed on March 27, 1985, pursuant to Government Code section 910 alleged that "[a]fter school on the premises" Brownell was shot in the back, causing a collapsed lung and damage to his kidney. Pursuant to LAUSD's request for clarification, on April 15, 1985, Brownell filed an amended claim which alleged that Brownell "was leaving the school but still on the school premises headed toward the bus stop when he was assaulted and shot by gang members. The school district failed to provide adequate security in a known risk area." After LAUSD rejected Brownell's claim, he filed a complaint in the superior court alleging, inter alia, that LAUSD "negligently and carelessly failed to properly supervise, guard, maintain, inspect and manage [the school] premises proximately causing" Brownell's injuries. The court denied the motion for judgment on the pleadings because it ruled that Brownell's claim for damages adequately stated a claim under the theory of negligent supervision, the theory alleged in the complaint.

LAUSD contends that the concept of negligent supervision in the complaint is not contained anywhere in the claim for damages, which provides notice only of a failure to provide adequate security and does not refer to any improper conduct by school personnel before the students were dismissed by the school. ■ The Tort Claims Act requires that any civil complaint for money or damages first be presented to and rejected by the pertinent public entity (see Gov. Code, §§ 910, 912.4-912.8, 945.4) and creates "a sympathetic bond between the administrative claim and the judicial complaint." (*Crow* v. *State of California* (1990) 222 Cal.App.3d 192, 199 [271 Cal.Rptr. 349].) Each theory of recovery against the public entity " 'must have been reflected in a timely claim. In addition, the factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint; even if the complaint were timely, the complaint is vulnerable to a demurrer

[or a motion for judgment on the pleadings] if it alleges a factual basis for recovery which is not fairly reflected in the written claim.' [Citation.]" (*Id.* at pp. 199-200.) It is acceptable for a plaintiff to elaborate or add further detail in the complaint to a claim which was predicated on the same fundamental facts described in the complaint. (*Id.* at p. 200; *Fall River Joint Unified School Dist.* v. *Superior Court* (1988) 206 Cal.App.3d 431, 434 [253 Cal.Rptr. 587].) However, a plaintiff may not "premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim" and may not completely "shift [the] allegations." (*Blair* v. *Superior Court* (1990) 218 Cal.App.3d 221, 226 [267 Cal.Rptr. 13]; see *Crow* v. *State of California, supra,* 222 Cal.App.3d at p. 200.)

■ In the present case, the complaint alleged not merely a negligent failure to "supervise," but also specifically a negligent and careless failure, in pertinent part, to "*guard,* maintain, inspect and manage" (italics added) the school premises. Such an allegation in the complaint is substantially similar to the administrative claim for damages which asserted a failure "to provide adequate security in a known risk area." To the extent that the claim for damages fails to specify improper conduct by LAUSD during school hours because it fails to specify the time of the negligent conduct (as opposed to the time of the injury), the claim is similar to and not inconsistent with the superior court complaint. Accordingly, the trial court properly denied the motion for judgment on the pleadings based on the claims statute.

II. *Injury Occurring Off School Premises and After School Hours*

■ LAUSD contends that it has no duty of care to students going to or from school regarding accidents which occur off school premises. Indeed, as a general principle, "school districts are not legally responsible for accidents that students may suffer once they have been released from school . . . . (*Kerwin* v. *County of San Mateo* (1959) 176 Cal.App.2d 304 [1 Cal.Rptr. 437].)" (*Perna* v. *Conejo Valley Unified School Dist.* (1983) 143 Cal.App.3d 292, 294 [192 Cal.Rptr. 10].) However, as noted in *Perna,* Education Code section 44808 qualifies this principle somewhat and provides, in pertinent part, that no school district "shall be responsible or in any way liable for the conduct or safety of any pupil of the public schools at any time when such pupil is not on school property, unless such district . . . [has] specifically assumed such responsibility or liability or has failed to exercise reasonable care under the circumstances." (See *Perna* v. *Conejo Valley Unified School Dist., supra,* 143 Cal.App.3d at pp. 294, 296.)

In *Hoyem* v. *Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508 [150 Cal.Rptr. 1, 585 P.2d 851], the court held that school districts have a duty to

exercise reasonable care in supervising students during school hours. In *Hoyem*, the complaint alleged that a 10-year-old truant who left school early one day and was injured by a motorcycle at a public intersection sustained injuries proximately caused by the school district's lack of supervision, even though the accident occurred off school premises. The court observed that Education Code section 44808 does not give a school district immunity for liability for off-campus accidents where a district, as described in the statute, "has failed to exercise reasonable care." (See *Hoyem*, *supra*, at p. 517.) The district "cannot automatically escape liability simply because the injury occurred off the school property." (*Perna* v. *Conejo Valley Unified School Dist.*, *supra*, 143 Cal.App.3d 292, 295.)

For example, in *Perna* v. *Conejo Valley Unified School Dist.*, *supra*, 143 Cal.App.3d 292, the court held a cause of action was properly stated for injuries to two students struck by a vehicle as they walked home. The complaint alleged proximate cause imputed to the school district from a teacher who kept the students after school hours and knew or reasonably should have known that a school crossing guard would be gone from the intersection by the time the students arrived to cross it on their way home.

In *Calandri* v. *Ione Unified School Dist.* (1963) 219 Cal.App.2d 542 [33 Cal.Rptr. 333], a student was injured at home by a toy cannon he built in school as a shop project and alleged that the failure of the teacher to warn of the toy's danger was a proximate cause of the off-campus injury. In reversing a verdict in favor of the school district because of instructional error, the court found that a duty of care was owed and that the claims of negligence and proximate cause were questions of fact for the jury. (*Id.* at pp. 548, 551.) Accordingly, under certain circumstances a school district may be held liable for injuries suffered by a student off school premises and after school hours where the injury resulted from the school's negligence while the student was on school premises. (*Hoyem* v. *Manhattan Beach City Sch. Dist.*, *supra*, 22 Cal.3d at pp. 515-516.)

III. *Claimed Breach of Duty of Reasonable Care to Adequately Supervise Students*

It is well settled that although a school district is not an insurer of its pupils' safety, school authorities have a duty to supervise the conduct of students on school grounds and to enforce rules and regulations necessary for their protection. (*Hoyem* v. *Manhattan Beach City Sch. Dist.*, *supra*, 22 Cal.3d at p. 513.) The standard of due care imposed on school authorities in exercising their supervisorial responsibilities is that degree of care which a

person of ordinary prudence, charged with comparable duties, would exercise under the same circumstances. (*Id.* at p. 519.)[3] As the court explained in *Hoyem*, in the context of a student who claimed negligent supervision after he absented himself from the school grounds during school hours and was subsequently injured by a motorist, "We require ordinary care, not fortresses; schools must be reasonably supervised, not truant-proof." (*Hoyem, supra,* at p. 519.)

■ In the present case, we find that the school district exercised due care and, under any view of the evidence, satisfied its supervisorial responsibilities in regard to protecting students from potential gang-related violence. It is a tragic and sad commentary upon our society when an innocent student attending high school is assaulted and shot by gang members upon leaving school premises. Nonetheless, a school cannot and should not be an insurer of the safety of students, particularly after school and off school premises, when it has exercised ordinary prudence and due care appropriate to the circumstances.[4] To paraphrase *Hoyem* v. *Manhattan Beach City Sch. Dist., supra,* 22 Cal.3d at page 519, the law requires ordinary care, not fortresses; schools must be reasonably supervised, not impenetrable to all gang-related violence.

LAUSD exercised reasonable and ordinary care and satisfied its duty to supervise adequately students in view of (1) the general precautions the school always took to minimize gang-related problems (e.g., prohibiting wearing gang colors and confiscating weapons), and (2) the absence of any advance indication to school personnel of potential gang violence pertinent to the incident involving Brownell. Although Johnson High School is located in a gang neighborhood and rival gangs attended the school with trouble ensuing on occasion in the school, it does not follow that the school had any duty to supervise to the extent of sending observers outside to scout the

---

[3]As the trial court properly instructed the jury: "School personnel are under a duty to adequately supervise students while those students are on school premises, and to exercise reasonable care in permitting students to leave school premises. A failure to perform these duties is negligence. A school district may be held liable for injuries to a student occurring off school premises, if the occurrence is a reasonably forseeable [*sic*] result of the conduct of school personnel on the school premises."

[4]We note that LAUSD is statutorily immune for any failure to provide police protection. Pursuant to Government Code section 845, "Neither a public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service."

neighborhood for gang members off the campus and to wait until, so to speak, "all was clear" before releasing the students.[5]

Imposing such a duty of visual precaution is unwarranted and impractical, as indicated by the very sudden and unexpected nature of the attack upon Brownell. Even if school personnel happened to observe the mere presence of gang members near the school, it would apparently not constitute an unusual or alarming phenomenon, since gang members were present in the school and lived in the neighborhood of the school. We find that school personnel of ordinary prudence under the circumstances described should not be required to engage in such visual precaution, absent either (1) any specific indication of a real and imminent gang-related threat at the particular time and place of the shooting, or (2) prior incidents reflecting not necessarily this identical type of assault but that "the possibility of this type of harm was foreseeable." (*Frances T.* v. *Village Green Owners Assn.* (1986) 42 Cal.3d 490, 503 [229 Cal.Rptr. 456, 723 P.2d 573, 59 A.L.R.4th 447].)

On appeal, Brownell does refer to gang members "hanging around" the school at the time students were discharged and engaging in criminal conduct, but this assertion of criminal conduct is unsupported by the record. Brownell further claims the existence of threats of violence or potential violence, but there is no indication that any such threats occurred on the day Brownell was injured. Brownell also asserts that a week prior to the shooting a fight of which school personnel were aware had occurred on school grounds. However, the record does not reveal when the incident occurred, but just suggests that after a conflict developed between a member of the Crips and a member of the Bloods, the latter stated that he could no longer attend the school, which was in Crips territory. The Bloods gang member did leave school, and any potential conflict was abated. The incident thus revealed no pending gang confrontation or similar violence.

■ Our Supreme Court has rejected the legal principle of a rigid foreseeability concept in the context of a duty of care. Rather, as explained in *Frances T.* v. *Village Green Owners Assn., supra,* 42 Cal.3d 490, foreseeability is determined in light of all the circumstances and does not require prior identical or even similar events. (*Id.* at p. 503.) However, the facts must demonstrate the defendant's awareness of the need for the precaution not taken or that such a precaution "could aid in deterring criminal conduct."

---

[5]In denying LAUSD's motion for a new trial, the court ruled that evidence supported such a breach of the duty of care. As the trial court erroneously viewed the matter, "The duty to supervise encompasses the duty to look outside before releasing the students. Nobody looked. It was not clear what they would have seen had they looked. They may or may not have seen these gang members walking down the street. We will never know, because nobody looked."

(*Frances T., supra,* at p. 503.)  ██  The facts in the present case fail to establish LAUSD's awareness of the need for a visual precaution or that such a precaution would have aided in deterring the injury suffered here. LAUSD's duty to protect against the acts of third persons is a duty of reasonable care to protect only against known or reasonably foreseeable risks. Here, LAUSD did not fail to take reasonable precautions against any foreseeable risk and fulfilled its duty of reasonable care.

## DISPOSITION

The judgment is reversed, and the superior court is directed to dismiss the complaint. Each party is to bear its own costs on appeal.

Turner, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied April 6, 1992, and respondent's petition for review by the Supreme Court was denied May 28, 1992.