952 P.2d 754

**Kathy HILL, individually and on behalf of the Estate of Clint Hill, Plaintiff/Appellant,**

v.

**SAFFORD UNIFIED SCHOOL DISTRICT; B.B. Andrews and Jane Doe Andrews, husband and wife, Defendants/Appellees.**

No. 2 CA–CV 96–0301.

Court of Appeals of Arizona, Division 2, Department B.

Dec. 30, 1997.

Zachar & Doughty by Christopher J. Zachar and Sean W. Doughty, Phoenix, for Plaintiff/Appellant.

Thomas & Elardo, P.C. by Neal B. Thomas, Phoenix, for Defendants/Appellees.

## OPINION

ESPINOSA, Judge.

Following an argument at school, Safford High School student Scott Fast fatally shot Clint Hill, another student, after school at a location outside the city of Safford. Plaintiff/appellant Kathy Hill, individually and on behalf of Clint Hill's estate, brought an action against defendants/appellees Safford Unified School District ("the school") and B.B. Andrews, a teacher at the school, to recover damages for negligence and wrongful death. The trial court granted summary judgment in favor of appellees, finding no liability as a matter of law. Appellant contends that the trial court erred because the school knew or should have known that Fast had dangerous propensities, it was foreseeable that Fast would harm or cause injury to Hill, and the school failed to take any action to prevent the events that led to his death. We affirm.

### Factual Background

The facts in this case are largely undisputed and we view them, and all reasonable inferences therefrom, in the light most favorable to the party appealing summary judgment. *Rogers v. Retrum*, 170 Ariz. 399, 825 P.2d 20 (App.1991). On Friday, September 17, 1993, Hill and a friend, Justin Grotte, had a verbal altercation at school with another student, Troy White, who was a member of a small gang in Safford that called itself the "Eight Ball Posse." The altercation took place during school hours, and school officials called Safford police after questioning Grotte and White. White was taken to the police station for further questioning, and the school suspended him for five days. On Monday, September 20, another verbal confrontation took place during school, this time between Fast, a friend of White and fellow "Eight Ball Posse" member, and Grotte, who was then joined by Hill. Teachers brought Hill and Fast to the school office. After

speaking with each student, the associate principal felt the situation was "defused" and allowed the boys to return to class, taking no further disciplinary action.

After classes ended, a group of students began to gather across the street from the school, apparently anticipating a fight between Fast and Grotte. Andrews happened to be driving by and he yelled, "Break it up," and, "Take it somewhere else." [1] Police were called, but before they arrived, several vehicles loaded with students left the scene and drove to an area outside of town known as Clay Knolls. When police responded, they were informed the students may have gone to that location. Meanwhile at Clay Knolls, Fast produced a gun and, after pointing it at several other students, shot Hill in the chest. The police arrived at the scene shortly after the shooting. Fast apparently had obtained the gun from a schoolmate's vehicle during the lunch period that day. School administrators had heard rumors about the "Eight Ball Posse" and had once searched Fast's school locker after hearing a rumor that he had a gun on school premises, although no gun was found. There had been no other shootings or similar incidents at or near the school.

### Standards of Review

■ On appeal from a summary judgment, we determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in applying the law. *Wallace v. Casa Grande Union High School District No. 82,* 184 Ariz. 419, 909 P.2d 486 (App.1995). We will affirm the trial court's decision if it is correct for any reason, even if that reason was not considered by the trial court. *Glaze v. Marcus,* 151 Ariz. 538, 729 P.2d 342 (App.1986); *Chavez v. Tolleson Elementary School District,* 122 Ariz. 472, 595 P.2d 1017 (App.1979).

### Duty

■ Appellant correctly points out that school teachers and administrators have both a statutory and common law duty not to subject students within their charge to a foreseeable and unreasonable risk of harm through acts, omissions, or school policy. *See* A.R.S. § 15–341(A)(17) (governing board shall provide for adequate supervision over pupils); *Jesik v. Maricopa County Community College District,* 125 Ariz. 543, 611 P.2d 547 (1980) (statute imposes duty of protection for students against torts). In a different context, our supreme court recently addressed the question of the common law duty of a premises owner to protect a guest from criminal attack. *Martinez v. Woodmar IV Condominiums Homeowners Assoc., Inc.,* 189 Ariz. 206, 941 P.2d 218 (1997). The court acknowledged the special relationship principle set forth in the Restatement (Second) of Torts § 315 (1965), which states there is

> no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the [defendant] and the third person which imposes a duty upon the [defendant] to control the third person's conduct, or (b) a special relation exists between the [defendant] and the [plaintiff] which gives to the [plaintiff] a right of protection.

*Id.* at 207–08, 941 P.2d at 219–20. The teacher-student relationship is a special relation that creates a duty of due care. *See Rogers; see also Fedie v. Travelodge International Inc.,* 162 Ariz. 263, 782 P.2d 739 (App.1989). Hence, the relationship between the school and Hill imposed an additional obligation on the school to take reasonable precautions for Hill's safety. That the school owed duties of supervision and care to Hill, however, is not dispositive of the question whether summary judgment was appropriate. The essence of those duties is to exercise reasonable care in light of foreseeable and unreasonable risks. *See Martinez; Rogers.* Thus, the essential question is whether, on the undisputed material facts, a reasonable jury could conclude the school breached its duties to Hill. *See Orme School v.*

---

1. Although we view the facts favorably towards the party opposing summary judgment, Hill's assertion that Andrews said "take the fight somewhere else" is not supported by admissible evidence. *See Wallace v. Casa Grande Union High School District No. 82,* 184 Ariz. 419, 909 P.2d 486 (App.1995); *cf.* Ariz.R.Civ.P. 56(e), 16 A.R.S.

*Reeves,* 166 Ariz. 301, 802 P.2d 1000 (1990). We conclude it could not.

### Alleged Breach of Duty

■ Ordinarily, it is a jury's function as fact finder to determine whether a risk of harm created by a defendant was foreseeable and unreasonable. *See Robertson v. Sixpence Inns of America,* 163 Ariz. 539, 789 P.2d 1040 (1990). However, "in approaching the question of negligence or unreasonable risk, 'the courts set outer limits'" and where reasonable persons could not differ, the court properly takes the issue from the jury. *Rogers,* 170 Ariz. at 402, 825 P.2d at 23 *quoting* Harper, James & Gray, *The Law of Torts* § 15.3 at 355 (2d ed. 1986); *see also Orme School; Flowers v. K–Mart Corp.,* 126 Ariz. 495, 616 P.2d 955 (App.1980); *Morris v. Ortiz,* 103 Ariz. 119, 437 P.2d 652 (1968). In reviewing a grant of summary judgment, "we look at whether sufficient evidence of foreseeability and possible prevention was presented to create a genuine issue of material fact." *Martinez,* 189 Ariz. at 211, 941 P.2d at 223; *see Coburn v. City of Tucson,* 143 Ariz. 50, 691 P.2d 1078 (1984) (summary judgment proper if insufficient evidence of breach of duty).

In its extensive minute entry, the trial court observed:

> At the oral argument, this Judge repeatedly asked counsel for the Plaintiff what it was that the school district did, or what it was that the school district failed to do, that constituted the negligence for which it should be held liable. Essentially, the answer that the court was given was that they should have done something to keep Clint Hill from being killed, and because he was killed the district was liable. The Court does not believe that the responsibility of the school goes so far as to impose what is essentially strict liability for anything that might happen to a student.

We note that appellant's briefs on appeal display a similar generality, primarily maintaining that the school "knew or should have realized that Scott Fast might avail himself of the opportunity to commit a tort or crime towards Clint Hill," and "[it] failed to provide any security or disciplinary measures to protect [him]." To determine the propriety of the trial court's ruling, we differentiate and address two recurring claims underlying appellant's argument and the evidence with respect to each.

### 1. School's Obligation to Supervise and Discipline

■ Appellant contends that the school created an unreasonable risk to Hill when it failed to properly supervise Fast on May 20 by not disciplining him pursuant to A.R.S. §§ 15–341(A)(13) and (A)(14),[2] which provide:

A. The governing board shall:

\* \* \*

13. Hold pupils to strict account for disorderly conduct on school property.

14. Discipline students for disorderly conduct on the way to and from school.

Appellant argues that this statute imposes liability on a school for the tortious conduct of a student whether committed on or off school premises, and that the school "should have perceived a risk to Clint Hill that Scott Fast would act irrationally because of his [gang] affiliation, and that irrational conduct may result in injury or death" to Hill. Although we agree with appellant that liability for supervisory omissions may not necessarily be circumscribed by school boundaries, *Rogers,* we cannot find that the school either failed to meet its statutory duty or created an unreasonable risk of harm to Hill.

■ Sections 15–341(A)(13) and (14) require schools to proscribe, judge and rectify student conduct. *See also* A.R.S. § 15–843(B).[3] Although not determinative on the question of negligence, this court has previously held that student discipline is a matter entrusted to schools and their governing boards' discretion, and judicial intervention is called for only to correct "a manifest abuse of

---

2. Formerly A.R.S. § 15–341(A)(14) and (A)(15), respectively. 1995 Ariz.Sess.Laws, ch. 268, § 16.

3. A.R.S. § 15–843(B) provides that "[t]he governing board of any school district shall, in consultation with the teachers and parents of the school district, prescribe rules for the discipline, suspension and expulsion of pupils."

discretion." *Tucson Public Schools, District No. 1 of Pima County v. Green,* 17 Ariz.App. 91, 94, 495 P.2d 861, 864 (1972); *see also Kelly v. Martin,* 16 Ariz.App. 7, 490 P.2d 836 (1971) (legislature delegated control of high school affairs to the school governing board, and courts possess only limited power to review the reasonableness of school disciplinary regulations and actions). Other courts have held that schools have wide discretion in disciplining students' behavior where the disciplinary policies and rules are reasonable and rationally related to the schools' purpose in providing public education. *See Beshears v. Unified School District No. 305,* 261 Kan. 555, 930 P.2d 1376 (1997); *Bencic v. City of Malden,* 32 Mass.App.Ct. 186, 587 N.E.2d 795 (1992). Indeed, the Supreme Court has noted that school districts, teachers, and administrators have a substantial interest in maintaining discipline in the classroom and on school grounds, and a school's authority to maintain security and order requires a certain degree of flexibility in school disciplinary procedures. *New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985).

After the September 20 verbal altercation between Hill and Fast was brought to the school's attention, it was within the school's discretion, based on its disciplinary guidelines, to decide whether and to what extent to punish either student. The school investigated the matter, briefly detained both boys, took their statements, and decided no further action was necessary. Although school officials had called police and disciplined a student on Friday, September 17, the circumstances and students involved in that incident were different. On that day, it was White, not Fast, who was involved in the altercation. White had made a threatening hand gesture as if to shoot Grotte and "was behaving erratically." Moreover, White had been in trouble before. The record reflects that on September 20 there was only a heated exchange of words between Hill and Fast, nothing more. After both boys were brought to the office, the assistant principal spoke with each of them individually. The only evidence in the record about those interviews and the school's knowledge of any potential danger to Hill is found in portions of the assistant principal's testimony at Fast's criminal trial:

Q. As a result of the interviews you conducted with Scott [Fast] and Clint [Hill] the afternoon of Monday the 20th, did you feel it necessary to take any disciplinary action against either of the boys at that time?

A. No, I did not. I visited like I say with Clint first and all he wanted was for Scott to stay out of his face and leave him alone.

And likewise, when Mr. Bonefas and I visited with Scott, he made a similar remark, that he just wanted Clint to mind his own business and he would mind his.

\* \* \*

Q. ... was it your understanding after talking with Clint and Scott Fast that the threats that had been going on between them that caused them to come into the office were just that they wanted to fight each other?

A. Those feelings existed and I was trying to find out why.

Q. And you felt those had been defused at the time they left your office?

A. Yes.

\* \* \*

Q. Do you recall whether Fast at that time told you of any threats that Troy White had told him about being made involving an organization called the Eight Ball Posse?

A. We had rumors about the Eight Ball Posse around the school but as far as it being a part of the conversation, this is on Friday?

Q. No, this is on Monday.

A. Monday Mr. Bonefas and I inquired about that and Scott at that time was not part of the conversation [sic]. It didn't relate to what we were talking about.

Q. So your understanding of what happened on the 20th is Eight Ball Posse was not part of the issue that existed between Clint Hill and Scott Fast at that time?

A. Yes, we asked Scott about it and his response to us was that was not a part of it.

From this, it is not possible to conclude that the school abused its discretion by not imposing discipline or that it should have anticipated that Fast would "act irrationally" and cause Hill injury or death. Nor is there any evidence that the school failed to follow any of its guidelines or policies. Thus, there is nothing to support the claim that the school violated the supervisory requirements of § 15–341(A)(13) and (17) and created an unreasonable risk of harm to Hill when it released both boys after questioning them and determining the problem did not require further action.

### 2. Foreseeability of Harm After School

Appellant also argues that the school breached its duty to discipline students for disorderly conduct on the way to and from school pursuant to A.R.S. § 15–341(A)(14) because it was foreseeable "that the students would 'take the fight somewhere else' as suggested by Defendant Andrews." The general test for whether a defendant's conduct has breached the standard of care is whether a foreseeable risk of injury resulted from the defendant's conduct. *Robertson.* Foreseeability of harm defines and limits the scope of conduct necessary to fulfill a duty. *Martinez.* A reasonably foreseeable event is one that might "reasonably be expected to occur now and then, and would be recognized as not highly unlikely if it did suggest itself to the actor's mind." *Tellez v. Saban,* 188 Ariz. 165, 172, 933 P.2d 1233, 1240 (App. 1996); *see Fazzolari v. Portland School District No. 1J,* 78 Or.App. 608, 717 P.2d 1210 (1986), *aff'd,* 303 Or. 1, 734 P.2d 1326 (1987). As our supreme court noted in *Martinez,* a defendant's duty of care "may include measures to protect others from criminal attacks, provided the attacks are reasonably foreseeable." 189 Ariz. at 211, 941 P.2d at 223. The reckless or criminal nature of a tortfeasor's conduct "does not place it beyond the scope of a duty of reasonable care if that duty entails foresight and prevention of precisely such a risk." *Rogers,* 170 Ariz. at 401–02, 825 P.2d at 22–23.

Appellant repeatedly asserts that Hill's death was "foreseeable" and "predictable." We find nothing in the record, however, to support that claim. There is no evidence Andrews or any school official was aware of any students bringing guns or weapons to school, or that any student had a weapon at the time Andrews drove by the group of students after school. Nor is there any evidence in the record to support appellant's claim of "on going gang difficulty at the school," or that Andrews or other school personnel knew that the after-school gathering had any gang relation. Indeed, when asked earlier that day whether the altercation with Hill involved the rumored "Eight Ball Posse," Fast told the assistant principal "that was not a part of it." There is also no evidence that Fast "was known to have dangerous propensities and violent tendencies," that Hill "reported threats by Scott Fast to school personnel," or that *the school or Andrews was aware that Hill and Fast "confronted each other"* at the gathering across the street from the school as appellant claims.

A number of cases have examined the question of foreseeability in the context of particular fact scenarios and lend support to a finding of insufficient indicia of foreseeability here. *See Fedie* (directed verdict for motel managers upheld where evidence insufficient to support conclusion they should have foreseen that visitor had dangerous propensities and might obtain room occupant's gun); *Hebert v. Club 37 Bar,* 145 Ariz. 351, 701 P.2d 847 (App.1984) (victim's shooting in parking lot unforeseeable when no reason for bar owners or bartender to believe intoxicated patron was dangerous or violent); *Brownell v. Los Angeles Unified School Dist.,* 4 Cal.App.4th 787, 5 Cal.Rptr.2d 756 (1992) (although school knew of gang activity in area, no similar incidents or other circumstances to alert it to possibility of off-campus shooting that occurred); *Danna v. Sewanhaka Central High School Dist.,* 662 N.Y.S.2d 71 (App.1997) (fight between students and resulting injury not reasonably foreseeable when neither student previously involved in or disciplined for fighting, and only prior dispute was verbal exchange a month be-

fore); *see also Morris* (directed verdict on negligent supervision action upheld where nothing to alert teacher that shop student who had been asked to stand on large piece of metal would instead leap onto its jagged edge and sustain injury); *compare Martinez* (sufficient evidence of foreseeability of harm to condominium guest where plaintiff introduced evidence that defendant knew gangs frequented its parking lot and conducted criminal activities there, and was warned of the need for 24–hour patrols); *Robertson* (motel manager who knew of just completed armed robbery on premises and failed to warn security guard could anticipate harm to him); *Jesik* (student's repeated requests for help and warnings that another was threatening to immediately kill him provided notice to school which imposed specific duty of protection).

Despite appellant's urging, this case bears only superficial resemblance to *Jesik*. There, a student had "words" with a man who told him he was coming back to the school with a gun to kill him. The student immediately reported the threat to a school security guard and received "assurances of help and protection." *Id.* at 544, 611 P.2d at 548. When the man returned with a briefcase, the student pointed both him and the briefcase out to the security guard, who again assured him of protection. Although the guard spoke to the man, the guard then left the area and the man pulled a gun from the briefcase and shot the student. Summary judgment was reversed because there was evidence that school personnel "had specific and repeated notice of both the actor and the exact type of harm that did in fact occur." 125 Ariz. at 547, 611 P.2d at 551. We find no like evidence here to support a breach of the school's duty of supervision or to put it on notice that Fast posed a danger to Hill, either during or after school.

This case bears more similarities to *Brownell*, where a gang mistook a high school student for a rival gang member and shot him. in the street outside the school after class. Although the school frequently removed gang-related items from students, had occasionally confiscated weapons, and another student previously had been threatened by "some Crips," there had been no prior shootings and no indications of potential gang violence the day of the assault. Brownell alleged negligent supervision in the school's failure to protect him from gang-related after-school violence. The California court of appeals disagreed, acknowledging the school could be held liable for injuries suffered by a student off school premises and after school hours, but finding no evidence that school officials were aware of a pending gang confrontation or similar violence, or any evidence "reflecting not necessarily this identical type of assault but that 'the possibility of this type of harm was foreseeable.'" 4 Cal. App.4th at 797, 5 Cal.Rptr.2d at 762 (citation omitted), *see also Danna* (breach of school's supervisory duty requires that third party acts could reasonably have been anticipated). As our supreme court noted in *Morris*: "[T]he principle is too well established for quibbling 'that before liability may be imposed for an act [or failure to act], the prevision of a reasonable person must be able to recognize danger of harm to the plaintiff or one in plaintiff's situation.'" 103 Ariz. at 121, 437 P.2d at 654 (citation omitted).

Appellant points to no evidence indicating the school's alleged knowledge of any pending gang activity or Fast's propensity for violence, other than nonspecific rumors of the "Eight Ball Posse" and a past rumor that Fast had a gun in his locker, a rumor the school investigated and dispelled. Moreover, the only concrete action appellant suggests the school could have taken was to detain Fast and call police or his parents after his verbal altercation with Hill the day of the shooting.[4] Appellant does not explain, however, why such action would have been warranted, much less required, other than because the school had done so in a similar situation three days earlier, notwithstanding that the two incidents involved different students and circumstances. Nor does appellant contend that detaining Fast and/or calling police would have prevented the ensuing

---

4. Although appellant also asserts Andrews could have called police, the record shows police were notified, apparently within minutes of the after-

*school gathering, but does not reveal whether they were alerted by school personnel, a policeman already in the area, or someone else.*

tragedy. In this regard, the trial court commented:

> This Judge cannot come up with anything that the school could have done to discipline Scott Fast that would have prevented him from hurting anyone. The power to discipline Scott Fast by detaining him would be through to [sic] the Juvenile Court, not the school district . . .

> * * *

> The school district did not have the power to lock Scott Fast up, and that is really the only way that this death could have been prevented.

In sum, the evidence here simply does not support appellant's assertions that the shooting was "foreseeable" and "probable." Rather, on the record before us, this is that rare case where it can be said "as a matter of law Defendant could not have taken reasonable measures that probably would have prevented the attack." *Martinez*, 189 Ariz. at 212, 941 P.2d at 224.

### Conclusion

Although we agree with appellant that the school owed a duty of reasonable care to Hill, our review of the record and the applicable precedents leads us to conclude as a matter of law that the school did not breach that duty, nor did it violate its supervisory duties under A.R.S. § 15–341. In view of our resolution of these issues, we need not address the question whether Fast's criminal act was an intervening, superseding event, as appellees argued below and on appeal. Because Hill's death was not reasonably foreseeable and did not result from an unreasonable risk created by the school or Andrews, the trial court properly granted summary judgment for the appellees.

Affirmed.

PELANDER, P.J., and HOWARD, J., concur.