[No. D053534. Fourth Dist., Div. One. May 20, 2009.]

ERIC M., a Minor, etc., Plaintiff and Appellant, v.
CAJON VALLEY UNION SCHOOL DISTRICT, Defendant and
Respondent.

## COUNSEL

Thomas J. Castonguay and Bruce Cornblum for Plaintiff and Appellant.

Stutz, Artiano, Shinoff & Holtz, Daniel R. Shinoff and Paul V. Carelli for Defendant and Respondent.

## OPINION

**HUFFMAN, Acting P. J.**—Plaintiff and appellant Eric M. (Eric), by and through his guardian ad litem, Gloria M., brought this action against defendant and respondent Cajon Valley Union School District (the District), alleging that his injuries from being hit by a car were proximately caused by the District's failure to supervise adequately the process of his dismissal from school and anticipated schoolbus ride home. After six-year-old Eric boarded but then immediately left the schoolbus (telling the bus driver he saw his father's car), shortly after school had ended for the day, he started walking to the bus stop where he thought his mother would pick him up, but he was hit by a car as he crossed the street.

Eric appeals from a judgment of dismissal entered against him after the trial court granted the District's motion for summary judgment and denied Eric's motion for summary adjudication on the existence of an affirmative duty not to let him off the bus under those circumstances. The trial court's ruling to grant the District's summary judgment motion was based on its analysis of duty and immunity under Education Code section 44808,[1] under the circumstances of a student being injured by being struck by a car, after

---

[1] All further statutory references are to the Education Code unless otherwise specified. In brief, section 44808 provides that school districts shall not be "responsible or in any way liable for the conduct or safety of any pupil of the public schools at any time when such pupil is not on school property, unless such district . . . has undertaken to provide transportation for such pupil to and from the school premises . . . or has failed to exercise reasonable care under the circumstances. . . ." Also: "In the event of such a specific undertaking, the district . . . shall be liable or responsible for the conduct or safety of any pupil only while such pupil is or should be under the immediate and direct supervision of an employee of such district or board." (*Ibid.*)

school and off campus. The court concluded the District owed Eric no duty, as of the time of his injuries, to provide him safe transportation under its transportation safety plan (TSP). (§ 39831.3; Gov. Code, § 815.)

The trial court's analysis applied authority from this court, *Guerrero v. South Bay Union School Dist.* (2003) 114 Cal.App.4th 264 [7 Cal.Rptr.3d 509] (*Guerrero*), to conclude that although the District had undertaken to provide transportation for pupils to and from the school premises, within the terms of section 44808, it had not undertaken to supervise children until they were safely in the arms of their parents. The trial court concluded the District had exercised reasonable care in its transportation functions under all the relevant circumstances and was entitled to statutory immunity. (§ 44808.)

On appeal, Eric argues the trial court erroneously determined as a matter of law that the District owed him no duty of reasonable care during the events leading up to his injuries. Eric contends the District negligently supervised him while he was on campus, i.e., boarding and then leaving the bus, and that such a failure of supervision was the proximate cause of the accident. According to Eric, the District, through its TSP, undertook the duty to transport him at the school but failed to exercise reasonable care by letting him leave the bus without making sure that he had alternative transportation.

We agree with Eric that, as a matter of law, and under existing authorities, the trial court incorrectly determined the District did not owe Eric a duty of reasonable care at the relevant times during these events. (*Hoyem v. Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508 [150 Cal.Rptr. 1, 585 P.2d 851] (*Hoyem*).) Moreover, triable material issues of fact remain regarding the extent and manner of performance of that duty, and the summary judgment and underlying summary adjudication ruling must be reversed.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Accident; Complaint

On September 15, 2005, Eric was a six-year-old first grade student at Johnson Elementary School, part of the District. Eric's parents had paid a fee for him to participate in the District's schoolbus program and had filled out paperwork showing that Eric would normally be dropped off after school at 2:35 p.m. at the Magnolia School bus location, which was close to his home. Eric had been in school for about a month and he was taking the bus home on an irregular basis, because sometimes one of his parents would pick him up,

and this changed day to day. Eric's parents told him that if he missed the bus home, he should go to the school office.

Under the District's TSP for providing schoolbus transportation service, once a student had signed up for this bus transportation, it was available to him but not mandatory. (§ 39831.3.) On the day of the accident, Eric was dismissed from school at 2:00 p.m. and headed for the schoolbus area. As required by the TSP, several school staff monitors were present as usual at the time of boarding the schoolbuses. Eric boarded the bus as usual but, within a minute, he told the driver, Ms. Youngs (not a party here), that he saw his father's car and was going to drive home with him. Ms. Youngs grabbed him by the arm and asked him if he was sure, and he said he was. Eric got off the bus while it was still on campus, but he could not find his father, who was not in fact there. (Apparently, his mother had come to campus in the family car around the same time, and was allegedly looking for him to tell him to ride the bus to Magnolia School, but she could not find him.)[2]

Eric then started to walk with other students toward Magnolia School, and after about a half a mile, he crossed a busy street. Meanwhile, his mother was reporting to the office that he was missing. Shortly thereafter, they learned he had been injured when a car struck him as he crossed the street.

Eric filed a complaint for personal injuries against the District and the driver/owner of the car.[3] In his governmental claim and amended complaint, Eric alleged that the District breached its duty of care when it "negligently permitted, allowed, and let [him] wander away from school." (See Gov. Code, §§ 815, 900 et seq.)

The District answered the complaint, raising numerous affirmative defenses, including the immunity of section 44808 for injuries incurred off school premises, after school hours.

### B. Motions; District Transportation Plan

The District moved for summary judgment, claiming section 44808 provided it with immunity for the accident, which occurred off campus and after school hours. It argued that contrary to arguments made by Eric that it had been negligent per se, its TSP was adequate under the statutory standards set by section 39831.3. The District provided evidence that Eric was not normally escorted to the bus, but that three or four staff members and teachers

---

[2] This record has been augmented with the lodged documents that were submitted to the trial court in connection with the motions.

[3] Eric dismissed his cause of action against the driver/owner after settlement.

were assigned and onsite for monitoring the boarding of the buses. The District relied on its transportation department handbook, describing a bus driver's duties to students on the bus and stating that students are to be properly supervised at all times. (TSP, § 200.12.) The District contended that since Eric had gotten off the bus while it was still on campus, it did not "undertake[]" to "transport[]" him that day, within the meaning of section 44808. (See *Guerrero, supra*, 114 Cal.App.4th 264, 267.)

Eric filed a cross-motion for summary adjudication (MSA) arguing the same duty issues but in an opposite manner, and additionally seeking a determination that certain Government Code immunities did not apply. (Gov. Code, §§ 815, 815.2, subd. (b), 820, subd. (b), 820.2, 820.8; sixth affirmative defense.) Eric also argued that under section 44807, school teachers must hold pupils "to a strict account for their conduct on the way to and from school," and therefore a duty of supervision existed for his way home.

### C. Rulings: Motion for Summary Judgment/Motion for Summary Adjudication

The trial court heard argument on both the District's motion for summary judgment and Eric's MSA on May 20, 2008, and it issued separate orders granting summary judgment to the District, and denying Eric's MSA that a duty was owed to him as alleged. In both rulings, the court concluded that section 44808 provided the District with immunity as a matter of law. According to the rulings, even though the District came under an obligation to supervise the children during bus transportation and a duty to provide a reasonably safe system, when it enacted and applied its TSP to provide transportation to and from school premises, no such particularized duty arose out of these facts. The court reasoned that Eric had left the bus after boarding it and was injured after school and off campus, and therefore, the necessary undertaking to transport him had not arisen. The court took note that there was no case law clearly defining where the duty to transport begins and ends, and concluded that such a "duty to transport arises when the student is transported from one location to another. This was not the case here." (Citing *Farley v. El Tejon Unified School Dist.* (1990) 225 Cal.App.3d 371, 380 [274 Cal.Rptr. 780] (*Farley*).)

Moreover, the ruling stated that no triable issues of fact had been raised as to the existence of duty and immunity under section 44808, because Eric failed to show that insufficient numbers of teacher-monitors had been provided, nor could he show that the bus driver was required to question and detain him until it could be ascertained whether he actually had alternate transportation. The court further determined that Eric had failed to plead and prove any cause of action for negligence per se or insufficiency of the TSP, under section 39831.3.

Based on the same reasoning, the MSA was denied for failure to establish a duty was owed to Eric when he got off the schoolbus and was later injured after school and off campus. The court found no undertaking of a duty to supervise Eric until he was safely united with his parents. (*Guerrero, supra*, 114 Cal.App.4th at p. 271.) For the same reasons, the trial court also found unmeritorious Eric's claim that he could prove the existence of a duty, leading to liability of the public entity, despite the governmental immunity provisions of Government Code section 815 et seq.

Thereafter, the court entered a final judgment of dismissal. Eric filed a timely appeal.

## DISCUSSION

### I

### GUERRERO *AND PREDECESSORS' APPROACHES TO DUTY*

We restate basic appellate standards of review, from *Guerrero, supra*, 114 Cal.App.4th 264, 268: " ' " 'Summary judgment is proper only where there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. [Citation.] "To secure summary judgment, a moving defendant may prove an affirmative defense, disprove at least one essential element of the plaintiff's cause of action [citations] or show that an element of the cause of action cannot be established [citations]." [Citation.] "All doubts as to whether any material, triable issues of fact exist are to be resolved in favor of the party opposing summary judgment. [Citation.]" [Citation.] We review the record de novo to determine whether defendants met their burdens of proof. [Citation.]' [Citation.]" ' [Citation.]"

It is well established that "[a] school district owes a duty of care to its students because a special relationship exists between the students and the district. [Citation.] The special relationship, by itself, does not create liability. Tort liability for governmental entities is based upon statute. [Citations.]" (*Guerrero, supra*, 114 Cal.App.4th 264, 268.) In *Hoyem, supra*, 22 Cal.3d 508, the Supreme Court analyzed liability and immunity issues arising from an injury to a student who was struck by a motorcycle some distance from the school grounds. In *Guerrero*, we explained the facts and conclusions in *Hoyem*, about section 44808, as follows: "The student had left the school without authorization and was injured after his departure. The school defended on the basis that the injury occurred off campus and was thus outside the statute. The court rejected that argument finding that the school failed to properly supervise the student in allowing him to leave and thus the question

was whether the on campus negligence was the proximate cause of the off-campus injury. [Citations.]" (*Guerrero, supra,* 114 Cal.App.4th 264, 269.)

■ The key legal issue in Eric's current appeal, as in Guerrero's, is to determine upon undisputed facts the existence of any statutory duty undertaken by the District (as an essential part of a negligence cause of action), within the terms of section 44808: " 'The threshold element of a negligence cause of action is the existence of a duty of reasonable care. [Citation.] Whether a duty of care exists is a question of law to be determined on a case-by-case basis. [Citation.]' [Citation.] Accordingly, we review de novo the trial court's determination that [the district] did not owe [student] a duty of care at the time of the accident. [Citation.] We also review de novo the trial court's determination that [the district] established its affirmative defense of immunity pursuant to section 44808 as a matter of law. [Citation.]" (*Guerrero, supra,* 114 Cal.App.4th 264, 268.)

■ Potentially, if summary judgment regarding the lack of a duty is reversed, Eric will be allowed to go forward to address the remaining elements of a negligence cause of action. If and when the alleged duties are established as a matter of law, the legal focus turns to the manner of exercise of reasonable care under the given set of circumstances. For example, in *Farley, supra,* 225 Cal.App.3d 371, 376, the court commented that section 44808 is "simply a recognition by the Legislature of the law existing prior to its enactment that once a school district undertakes to provide transportation for its pupils it has a duty to exercise reasonable care under the circumstances." Even though a school district ordinarily has no legal duty to supply bus transportation to students, " '[o]nce it does so, no one would deny a concomitant obligation to provide a reasonably safe system.' [Citation.]" (*Ibid.*)

In *Farley, supra,* 225 Cal.App.3d 371, 376–377, the facts were that the schoolbus driver stopped to let children out at the usual stop on one side of the road, where many of the children normally had to cross the road to get to the operative destination there (store and parking lot where parents waited). The appellate court interpreted the last paragraph of section 44808 (that liability for the safety of a pupil exists only while the pupil is/should be under the immediate and direct supervision of an employee of the district), as raising the question of how this duty should be applied: "Whether or not [student] should have been 'under the immediate and direct supervision of an employee of the District' depends on whether the exercise of reasonable care under the circumstances required" its bus driver to exercise more supervision. (225 Cal.App.3d at p. 377.) In *Farley,* those specific circumstances did give rise to a duty of reasonable care that required the bus driver to supervise the student's crossing of the road, after being discharged from the bus, quite apart from the statutory duty to turn on the red lights. (Veh. Code, § 22112.)

Thus, in *Farley, supra,* 225 Cal.App.3d 371, it was deemed to be a triable issue of fact whether the exercise of "reasonable care under the circumstances" (§ 44808) would require a schoolbus driver, who had knowledge of the road conditions there, to "supervise the children's safe crossing" (*Farley, supra,* at p. 380) of the road after the children exited the bus. Further, if the trier of fact found the district to be negligent under the circumstances, by breaching that duty, the trier of fact would next have to address "whether the act or omission forming the basis of such finding is a proximate cause of the accident and [student's] resulting damages . . . ." (*Ibid.*) "The ultimate issue here, therefore, is whether the school district, acting through its officers and employees, was negligent under the circumstances as shown by the evidence." (*Id.* at p. 379.)

In our case, the trial court's ruling on the immunity of section 44808 was central to its other legal conclusions, that Eric could not claim any negligence per se under the TSP statute (§ 39831.3), nor could Eric achieve summary adjudication of the governmental duty or immunity issues in his own cross-motion. (Gov. Code, § 815 et seq.) On appeal, those rulings are subsumed within the grant of summary judgment. As will be explained, our disagreement with the trial court's basic conclusions on this section 44808 immunity requires reversal of the summary judgment as a whole, and we need not directly address those secondary issues, except as noted below.

II

### *BEYOND* GUERRERO*: SECTION 44808 AND ITS "UNDERTAKINGS"*

■ "Under section 44808, [the district] would not be liable for injuries off campus and after school unless they were the result of the District's negligence occurring on school grounds or were the result of some specific undertaking by the District, *which was then performed in a negligent manner.*" (*Guerrero, supra,* 114 Cal.App.4th at p. 269, italics added.) Eric recognizes that the District's liability in this case is governed by section 44808, which provides in full: "Notwithstanding any other provision of this code, no school district, city or county board of education, county superintendent of schools, or any officer or employee of such district or board shall be responsible or in any way liable for the conduct or safety of any pupil of the public schools at any time when such pupil is not on school property, *unless such district, board, or person has undertaken to provide transportation for such pupil to and from the school premises,* has undertaken a school-sponsored activity off the premises of such school, has otherwise specifically assumed such responsibility or liability *or has failed to exercise reasonable care under the circumstances.* [¶] In the event of such a specific undertaking,

the district, board, or person shall be liable or responsible for the conduct or safety of any pupil *only while such pupil is or should be under the immediate and direct supervision* of an employee of such district or board." (Italics added.)

In *Guerrero, supra,* 114 Cal.App.4th at page 274, the majority opinion upheld a grant of summary judgment to the district, finding there was no "undertaking" by the school to safeguard the student under those particular circumstances. We explained, "Section 44808 has struck a balance in which the Legislature has immunized the schools from tort liability for off-campus conduct unless the District has undertaken such responsibility or the negligence occurs in the discharge of the school's ordinary, on-campus, during school hours activities." (*Guerrero, supra,* at p. 274.) We found no factual connection between the school district's release of the student from school and her later unfortunate accident. (*Id.* at p. 270.)

In *Guerrero, supra,* 114 Cal.App.4th 264, 275–276, we relied on *Hoyem, supra,* 22 Cal.3d 508, as authority that a school district may be held liable when, as a result of a school's failure to supervise students on school grounds after school, a student leaves the premises and is injured. (*Id.* at p. 513; see also *Brownell v. Los Angeles Unified School Dist.* (1992) 4 Cal.App.4th 787, 795–796 [5 Cal.Rptr.2d 756] (*Brownell*).) School districts must exercise reasonable care "in supervising the dismissal of students and specifically, in permitting students to leave school premises" (*Guerrero, supra,* at p. 275) because the clear legislative intent of section 44808 is: "[W]hen a school district fails to exercise reasonable care the immunity of this section evaporates." (*Hoyem, supra,* at p. 517, fn. 2.)[4]

Stated another way: "[T]he *Hoyem* court explained, 'defendant's liability in this case is posited not on an alleged failure to supervise [the student] when he was off the school premises, but rather on an alleged failure to exercise due care in supervision on school premises.' [Citation.]" (*Bassett v. Lakeside Inn, Inc.* (2006) 140 Cal.App.4th 863, 872 [44 Cal.Rptr.3d 827].)

In Eric's case, he attributes the duty that was breached to those references in section 44808 to undertaking an obligation of providing transportation from school premises, at a time when he should have been under the

---

[4] " 'The "reasonable care" phrase enunciates a standard of care and as such cannot exist in a vacuum; in the absence of a duty to which it applies, the phrase is meaningless.' [Citation.]" (*Wolfe v. Dublin Unified School Dist.* (1997) 56 Cal.App.4th 126, 129 [65 Cal.Rptr.2d 280]; see *Ramirez v. Long Beach Unified School Dist.* (2002) 105 Cal.App.4th 182, 189 [129 Cal.Rptr.2d 128].) We need not express any opinion in this case about whether *Wolfe* correctly interpreted the holding in *Hoyem, supra,* 22 Cal.3d 508, and its section 44808 "reasonable care exception to immunity." These issues do not concern that distinction.

immediate and direct supervision of the District, and he argues those obligations were not performed with reasonable care under the circumstances. Those arguments require us to analyze (1) whether the District had undertaken the responsibilities in the transportation process that concerned boarding and exiting the bus, as part of its ordinary, on-campus activities that normally took place in connection with normal school hours; (2) was Eric (or should he have been) under "immediate and direct" supervision throughout that process; and (3) if any triable issues of fact remain about the manner of performance of the District's duties in those respects, as measured by a duty of reasonable care. We next examine the record facts about these operative portions of the statute.

### A. Section 44808: What "undertaking to provide transportation," regarding school premises?

■ This case hinges on the scope of any duty owed by the District, as undertaken in the bus transportation process that was part of its ordinary, on-campus activities, in connection with the beginning and ending of the schoolday. First, we seek to clarify that we need not address any separate claim by Eric that is based on negligence per se, under the provisions of section 39831.3 (adequacy of the TSP). Nevertheless, the language of that section is relevant to the overall duty issues presented. This statute requires school districts that provide transportation to or from school (or school activities) to prepare a TSP, containing procedures for school personnel to follow "*to ensure the safe transport of pupils.*" (§ 39831.3, subd. (a), italics added.) Such a plan must address and include, among other factors, "Procedures for all pupils in prekindergarten [through grade 8], to follow *as they board and exit the appropriate schoolbus* at each pupil's schoolbus stop" (§ 39831.3, subd. (a)(2)(A)), and for "[*b*]*oarding and exiting a schoolbus at a school* or other trip destination" (§ 39831.3, subd. (a)(3), italics added; see § 39831.3, subd. (a)(2)(B) [expressly provides that onboard staff person schoolbus monitors are not required, in addition to the bus driver]).

In its ruling, the trial court noted that case authorities do not address when the duty to transport begins and ends. Nevertheless, we can glean from the statutory language regarding the TSP that the transportation undertaking must cover the boarding and exit processes for schoolbuses, as part of the departure process from school. (See *Farley, supra*, 225 Cal.App.3d at pp. 376–380.) This is normally addressed through the provision of appropriate monitoring by trained staff, in the vicinity. Logically, these functions of gaining access to the transportation vehicle, and leaving it, should be deemed to be part of the entire transportation process, and we reject the claim of the District that "transportation" can only occur when the bus is in gear and in motion. (See definition of "transport": "to carry, move, or convey from one

place to another; the act of transporting or conveying . . . ."; definition of "transportation": "the business of conveying people, goods, etc." (Random House Dict. (2d ed. 1987) p. 2012).)

Moreover, the TSP and related District handbook provide that bus drivers may not leave the school until five minutes after the dismissal bell, and drivers must remain in their assigned buses when pupils are nearby the loading and unloading zone. Under the TSP, "Drivers are to ensure students are properly supervised at all times." The TSP further provides that school personnel are responsible for monitoring the boarding and exiting of school-buses at the school site or trip destination. From these materials, it is evident that the District has in fact undertaken some duty of care to its students for some period of time after dismissal, and during the transportation process, which must include the specific activities of boarding and exiting the bus.

We therefore reject the argument by the District that since it was not compelled to provide bus transportation to students, under the terms of section 39800, and did so discretionarily (§ 35350), therefore the law cannot impose any duty "to stop a child who wants to walk home or leave school to meet his father." That argument disregards the affirmative undertaking by the District to provide bus transportation, and the resulting duty of providing it with reasonable care. It also disregards the nature of the transportation process, which has a beginning, a middle, and an end. Once the child routinely boarded the bus, the situation changed from one in which a student does not utilize bus service at all. The school here was a full participant in the process of getting the child to and from school, and it provided some oversight in the form of staff monitoring. (Also, Eric's parents told him that if he missed the bus he should go to the school office, and the staff would presumably oversee this.)

The way in which section 44808 is structured requires us next to take into account that the District's specific undertaking of providing transportation may subject it to liability "only while such pupil is or should be under the immediate and direct supervision" of the District employees.

### B. Section 44808: Was Eric under the immediate and direct supervision of the District, or should he have been?

Particularly since schoolbuses transport children, and they are immature, the TSP anticipates that direct supervision is needed. Eric relies on a delinquency case for the general proposition that a child in his position in the school environment is generally not "free to continue on his way," because "unemancipated minors lack some of the most fundamental rights of self-determination—including even the right of liberty in its narrow sense, *i.e.*, the

right to come and go at will. They are subject, even as to their physical freedom, to the control of their parents or guardians. [Citation.]" (*In re Randy G.* (2001) 26 Cal.4th 556, 562 [110 Cal.Rptr.2d 516, 28 P.3d 239].) He argues that he should have been more closely supervised, as a six year old who thought he saw his father's car, and accordingly bolted from the bus after boarding it. Eric relies on *Hoyem, supra,* 22 Cal.3d 508, for the statement that a school district owes a duty of reasonable care in supervising students "in its charge." (*Id.* at p. 513.)

In reply, the District cites to the bus driver's deposition testimony that she could have gotten into trouble by physically restraining the child, and that the incident happened within a very short timeframe. To fully address whether "supervision" of the transportation process could reasonably be deemed to include the fact pattern before us, we are required to take into account not only Eric's young age, but also the responsibilities placed upon a bus driver to provide immediate and direct supervision not only to one student, who may be acting in an unusual manner, but also to all of her charges. During the bus loading process, the students are still on the school premises, under the supervision of staff monitors and bus drivers, even though the school bell had rung.

█ Other authorities have found a duty of reasonable care exists on school premises, after hours, and that a failure to supervise a student there could proximately lead to injury elsewhere. (*Brownell, supra,* 4 Cal.App.4th at pp. 795–796.) For example, in *Perna v. Conejo Valley Unified School Dist.* (1983) 143 Cal.App.3d 292, 294–295 [192 Cal.Rptr. 10], the allegations were that the student-plaintiffs were kept after school by their teacher, "so that they were forced to cross an intersection at a time when the crossing guard was not there" (*id.* at p. 296), and the teacher knew (or should have known) this. The appellate court relied on section 44808 in ruling that a cause of action could be stated against the school district for negligence, on a theory that such conduct of the teacher in keeping the students on premises after school, when the students were later injured off premises after school, could have been a causative factor in the injuries. The court said, "Our decision does not rest on an alleged failure to supervise plaintiffs when they were off the school's premises." (*Perna, supra,* at p. 296.) The proximate cause of injury was a question of fact for the jury. (*Ibid.*)

Here too, the location of the bus stop at school, where Eric boarded the bus, supports a finding that the District undertook to provide immediate and direct supervision of him during the loading process, and the fact that the injuries took place later, off campus, is not dispositive. The TSP anticipates that the duty of reasonable care continues until the student is safely loaded on the bus, and during the bus ride. What about when the student departs the

bus? Was Eric's potential sighting of his father's car enough to terminate the duty of the District to supervise the boarding and exiting process for the bus? In *Farley, supra,* 225 Cal.App.3d 371, 376–377, the supervision duty extended after the child had exited the bus, because it was known to the school system that the children had to cross the street to reach a normal pickup spot, and it was foreseeable that injuries might occur. According to Eric, the District undertook and had "an obligation to supervise the children during that transportation and a duty to provide a reasonably safe system" (*Farley, supra,* 225 Cal.App.3d at p. 380), and the trier of fact should be allowed to decide what the exercise of reasonable care under the circumstances of this case required the District to have done, on pain of liability. However, we reject his excessively detailed formulation of this duty in his MSA.

### C. *Section 44808: Triable issues on whether the District failed to exercise reasonable care under all the circumstances?*

■ We think it is a triable issue of fact whether the duty of immediate and direct supervision of pupils was invoked and breached under these circumstances, in which a young child takes it upon himself to depart the bus. Once the child was on the bus, as part of the process of leaving school, the District had the duty to exercise ordinary care in the duty that it undertook to transport him. (See *Farley, supra,* 225 Cal.App.3d at p. 380.) A reasonable juror could conclude that it was foreseeable that a six-year-old child might make a bad decision to leave the schoolbus, under an erroneous belief that his parents were outside, and could be harmed on the street. A jury could further conclude that precautions beyond those that the District provided were warranted. A reasonable juror could conclude that the bus driver should have done more than grab the child, question him, accept his answer, and thereby allow him to leave the bus and therefore also the school premises, without further "direct and immediate" supervision. For example, should the bus driver have summoned one of the staff monitors present onsite, to contact the parents or the office? Should the monitors require that the father be present before the child was released? These are jury questions.

Under these circumstances, triable issues of fact remain about whether the District fulfilled its duties to exercise reasonable care in permitting Eric to leave the bus while it was parked on school premises and actively engaged in the process of loading students. (*Farley, supra,* 225 Cal.App.3d at p. 380; *Brownell, supra,* 4 Cal.App.4th at p. 796, fn. 3.) We therefore conclude this record discloses triable issues on whether the undertaken transportation process, on these particular facts, was performed in a negligent manner. (See *Mosley v. San Bernardino City Unified School Dist.* (2005) 134 Cal.App.4th 1260, 1264 [36 Cal.Rptr.3d 724].)

## DISPOSITION

Summary judgment is reversed. Each party to bear its own costs.

McDonald, J., and Aaron, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 12, 2009, S174409. Moreno, J., and Corrigan, J., did not participate therein.