Filed 6/18/13  Cauzza v. Julian Union H.S. Dist. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| VICTOR CAUZZA et al., <br><br> Cross-complainants and Appellants, <br><br> v. <br><br> JULIAN UNION HIGH SCHOOL DISTRICT, <br><br> Cross-defendant and Respondent. | D060364 <br><br><br> (Super. Ct. No. 37-2008-00102526-CU-PO-EC) |

APPEAL from a judgment and postjudgment order of the Superior Court of San Diego, Joel R. Wohlfeil, Judge.  Affirmed.

Daley & Heft, Lee H. Roistacher, Robert R. Heft, David P. Berman for Cross-complainants and Appellants, Victor Cauzza and Julie Cauzza.

Stutz Artiano Shinoff & Holtz, Daniel R. Shinoff, Paul V. Carelli IV for Cross-defendant and Respondent Julian Union High School District.

Appellants Victor Cauzza and Julie Cauzza appeal from a summary judgment in favor of respondent Julian Union High School District (District) on the Cauzzas' second amended cross-complaint for equitable indemnity filed after the Cauzzas were sued by a Julian High School student for personal injuries occurring on their property, where they were storing a junior class homecoming float. The Cauzzas also appeal from a postjudgment order awarding District costs as the prevailing party. The Cauzzas contend the trial court erred in granting summary judgment because (1) they demonstrated a triable issue of fact as to whether they had recoverable indemnity damages, namely the potential recovery of attorney fees from District under Code of Civil Procedure[1] section 1021.6; and (2) triable issues of fact exist as to whether District is entitled to immunity from liability under Education Code section 44808. They further contend the trial court erred by ruling it was without discretion to deny District costs as the prevailing party under section 1032, subdivision (a).

We conclude District demonstrated its entitlement to summary judgment and the Cauzzas did not present evidence raising a triable issue of material fact for a jury. We further conclude the trial court did not err in awarding District costs as the prevailing party under section 1032. Accordingly, we affirm the judgment and postjudgment order.

FACTUAL AND PROCEDURAL BACKGROUND

We take the factual background from the undisputed facts in the parties' separate statements, and otherwise state the facts and draw inferences favorable to the Cauzzas as

---

[1]     Statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

the parties opposing summary judgment. (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 843; *Conroy v. Regents of University of Cal.* (2009) 45 Cal.4th 1244, 1249-1250; *Ragland v. U.S. Bank Nat. Assn.* (2012) 209 Cal.App.4th 182, 197.)

District hosts a homecoming parade as part of the Julian High School (JHS) homecoming activities. For years, float building has been part of the annual homecoming activities, and each high school class is permitted to construct a float for the parade, which exists exclusively for the demonstration of class floats. The school schedules a half day for students and faculty to participate in the parade.

Each class at JHS has a class advisor for the year with responsibility to oversee class meetings at which students made decisions concerning their floats. Scott Munson, the senior class advisor for the 2007/2008 school year and also a teacher and coach at JHS for 25 years, attended all of the official senior class meetings, and at times provided input as to the meeting agendas. Class meetings were held on campus during school hours in a particular class period, but students were not required to attend as long as they had a legitimate school excuse to be somewhere else.[2] Though they volunteered for the advisor positions, District paid the senior and junior class advisors a stipend for their participation. District exercised editorial control over the content of student class floats, and that year, the seniors used their class funds to pay for float materials. Though

---

[2]     Munson testified at his deposition that if a senior class member did not want to attend a meeting, he or she would either go to a counselor, the office, or to another teacher and be excused from the meeting. Otherwise, if the student left campus he or she could be considered truant. However, Munson stated the class meetings were not mandatory. Another class advisor testified at her deposition that the class meetings occurred during the "ssr" (silent sustained reading) class period.

students did not receive any grade for their floats or for participation in their construction, classes would be awarded points for their participation, which would accrue toward an end-of-the-year prize for the most involved class.

Students were aware of a tradition of vandalizing floats on the night before the homecoming parade, which was referred to as "float night." The tradition involved students throwing eggs or shooting paintballs at the floats as well as alcohol consumption, and students in each class slept on the float that night to protect it. Munson was aware of floats being hit by paintballs, and had seen football players who were visibly bruised by paintballs but considered it a "badge of honor" to be hit by one while protecting their floats. In the fall of 2007, students had approached Cheryl McColl, the junior class advisor, to tell her they were concerned that other classes would throw eggs or shoot paintballs at their floats. McColl asked Munson to advise his seniors to concern themselves with their own float.

In the years leading up to 2007, Detective Keith Dalton, a local sheriff's deputy assigned to JHS, had spoken with previous superintendents, principals and even school board members about the safety of float night activities and vandalism. He also discussed concerns about safety, vandalism and trespassing with JHS students' parents, specifically about the escalation of events, how unsafe it was, and how much law enforcement time it was consuming. He had similar discussions with school board members, and was aware that the administration at various times addressed the students in assembly or through teachers, warning against behavior such as violating curfew or trespassing. He had heard from previous administration members that the matter was not

4

a school activity, but rather an after-school activity that took place off campus at a private home.

In 2007, the senior float was constructed at the home of David and Lisa Boyer, whose daughter was a senior at JHS. That year, Munson and his daughter, who was also then a senior, participated in the senior class float construction and Munson helped the seniors finish their float on float night, which was October 4, 2007. Munson had been to the Boyer residence three times including that night. On float night, he left the Boyers' home at about 8:00 p.m. At some point, Munson told his students to protect their float. He understood some seniors, including his daughter, were going to stay the night at the Boyers' to protect their float. He did not admonish them to not mess with other class floats. Jennifer Rose Smelser, a senior at JHS, was at the Boyers' home and drank alcohol while she was there, as did other seniors.

The junior class float was at the Cauzzas' home that night. Bud Cauzza was a JHS graduate and had attended all four years of high school there. On the afternoon of October 4, 2007, McColl stopped at the Cauzzas and left around dinner time. Though she was not required to participate in float building, she had been to the Cauzzas' on more than one occasion to check on the students' progress. Before she left, Bud Cauzza expressed his concern about something happening with eggs or paintballs, and McColl told him that if for any reason they felt uncomfortable during the night, they should call the police.

Just after midnight, Smelser and some of her friends passed through a barbed fence onto the Cauzzas' property to throw eggs and shoot paintballs at the junior class

float.  At some point after she had run down a hill toward the float, an unknown object struck Smelser in the head and injured her.  The following day, District cancelled the homecoming parade and the scheduled short school day.  The JHS interim superintendent and principal, Peter McHugh, apologized to students during the assembly the next day, telling them he did not do his job as an educator and that in the future it was his responsibility to do a better job about educating them about proper conduct.  Thereafter, an administrative decision was made to require float building to take place on campus, and District hired security guards to protect the floats.[3]

Smelser and her parents sued the Cauzzas for personal injuries, alleging the Cauzzas' son, Todd Cauzza, hit Smelser in the head that night with a baseball bat.  The Cauzzas then filed a government tort claim with District.  After District rejected their claim, the Cauzzas filed a cross-complaint against District for contribution, implied and express indemnity and declaratory relief, alleging that negligence by District employees contributed to Smelser's injuries.  The trial court eventually granted the Cauzzas leave to file a second amended cross-complaint adding claims for negligent supervision and "statutory liability."  Other defendants, including Todd Cauzza, filed indemnity and contribution cross-complaints against District.

District moved for summary judgment or alternatively summary adjudication of issues on the Cauzzas' indemnity cross-complaint.  It argued it was immune from liability

---

[3]    District objected to this evidence, which the Cauzzas provided via deposition testimony of Cara Kern, as inadmissible "[s]ubsequent repair evidence."  There is no indication the trial court considered this objection or ruled upon it, but the objections are nevertheless preserved on appeal.  (*Reid v. Google* (2010) 50 Cal.4th 512, 532.)

under Education Code section 44808 as a matter of law because (1) Smelser was not on school property when she was injured; (2) District did not undertake a school-sponsored activity off school property; (3) District did not specifically assume responsibility or liability for the off-campus activity; (4) the Cauzzas could not maintain a separate negligence action against it; (5) Smelser was not, and should not have been, under the direct supervision of a District employee when she was injured; and (6) the Cauzzas failed to properly allege a dangerous condition.

In November 2010, the Cauzzas obtained summary judgment on Smelser's complaint on grounds they did not owe Smelser a duty of care as a matter of law, and her parents did not allege a direct injury. In opposition to District's motion, they argued in part that though they had been absolved from liability, they nevertheless had a right to be indemnified under section 1021.6 for the attorney fees incurred in defending Smelser's complaint. They also sought sanctions against District in part for its asserted refusal to agree to a cost waiver.

Thereafter, the trial court granted summary judgment in District's favor. Sustaining some of District's objections to the Cauzzas' evidence, it first ruled section 1021.6 by its terms only applied to claims for implied indemnity where the indemnitee has been required to bring or defend an action through the tort of the indemnitor, and did not apply to the Cauzzas because they were not required to defend the action based solely on District's wrongdoing. It then turned to the Cauzzas' claims that District did not qualify for immunity under Education Code section 44808, ruling: the Cauzzas did not provide evidence that District employees breached a duty owed to Smelser while she was

7

on campus; there was no evidence District required attendance or gave credit for participating in float building; the class advisors' participation in float construction was not a specific assumption of responsibility or liability by District; there was no evidence District required class advisors to attend any off-campus function regarding float building or that any advisor spent the night, and thus Smelser was not, nor should she have been, under the immediate and direct supervision of a District or school board employee. The court denied the Cauzzas' request for sanctions.

In June 2011, District filed a memorandum of costs seeking $15,335.76 in costs as the prevailing party. The Cauzzas moved to tax the costs bill in its entirety on grounds District was not a prevailing party under section 1032 and it was inequitable to award prevailing party costs to District, where the Cauzzas' indemnity claim was extinguished by virtue of their prevailing against Smelser. Alternatively, they asked the court to apportion the costs between the four distinct cross-complaints against District, and reduce the maximum recoverable costs to $3,525.31.

The trial court granted in part and denied in part the Cauzzas' motion to tax. It determined District was a prevailing party under section 1032, subdivision (a)(4) entitled to statutory costs. Pointing to the grounds on which it granted summary judgment in District's favor and citing *Great Western Bank v. Converse Consultants, Inc.* (1997) 58 Cal.App.4th 609, 613, the court reasoned: "A cross-defendant for indemnity in whose favor a dismissal of the cross-complaint is entered is the prevailing party. [Citation.] The *Great Western* case cites numerous cases involving the dismissal of indemnity claims after good faith settlement determinations. The Court has held that a dismissed

8

indemnitor is entitled to costs as a prevailing party even in situations where the indemnity claims were 'deemed filed' (i.e. no actual cross-complaint filed but the cross-complaint was deemed filed by a case management order signed by all parties in the case). *Great Western* and the cases cited therein make it clear that there is no 'equitable' basis to disallow costs if the party meets the statutory definition for costs of [section] 1032." (Italics added, some capitalization omitted.)

The Cauzzas appeal from the ensuing judgment, as well as the postjudgment order awarding District costs.

DISCUSSION

I. *Summary Judgment on the Cauzzas' Equitable Indemnity Cross-Complaint*

A. *Legal Standards*

" ' " ' "Summary judgment is proper only where there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. [Citation.] 'To secure summary judgment, a moving defendant may prove an affirmative defense, disprove at least one essential element of the plaintiff's cause of action [citations] or show that an element of the cause of action cannot be established [citations].' [Citation.] 'All doubts as to whether any material, triable issues of fact exist are to be resolved in favor of the party opposing summary judgment.' " ' " ' " (*Eric M. v. Cajon Valley Union School Dist.* (2009) 174 Cal.App.4th 285, 292 (*Eric M.*), quoting *Guerrero v. South Bay Union School District* (2003) 114 Cal.App.4th 264, 268 (*Guerrero*).)

We independently review the moving and opposing summary judgment papers to ascertain whether the parties met their respective burdens (*ibid.*), applying the same legal

9

standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law.  (*Greystone Homes, Inc.. v. Midtec, Inc.* (2008) 168 Cal.App.4th 1194, 1207.)  We consider all of the evidence except that to which objections have been made and sustained.  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)

B.  *Application of Section 1021.6*

The Cauzzas argue the trial court erred as a matter of law in ruling they had no recoverable indemnity damages following their success on Smelser's complaint, or could not recover section 1021.6 attorney fees in defending against Smelser's claims, thus entitling District to summary judgment.  They maintain all they needed to show to avoid summary judgment was they could *potentially* recover attorney fees, and met that burden when they showed they were adjudged innocent indemnitees.  The Cauzzas also fault the trial court's conclusion that section 1021.6 fees were not recoverable by an indemnitee defending itself in an action alleging its own wrongdoing.  They argue such a rule would render the statute a nullity, and was not the Legislature's intent.[4]

---

4       We observe District did not raise or discuss section 1021.6 in its moving or reply summary judgment papers.  The Cauzzas first raised the statute in opposition to District's motion, arguing that despite the finding of no liability in the Smelser action, they nevertheless could maintain an indemnity action under section 1021.6, which allowed innocent indemnitees such as themselves to recover attorney fees.  District had an opportunity to develop its arguments and evidence in response.  Because the interpretation of a statute is a question of law (*Bruns v. E Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724), and the essential procedural facts relevant to the application of section 1021.6 are undisputed, we may consider the matter even assuming it was not fully briefed below.  (*Ward v. Taggart* (1959) 51 Cal.2d 736, 742; *Cal Sierra Const., Inc. v. Comerica Bank* (2012) 206 Cal.App.4th 841, 851 [legal arguments may be raised for

Section 1021.6 provides: "Upon motion, a court after reviewing the evidence in the principal case may award attorney's fees to a person who prevails on a claim for implied indemnity if the court finds (a) that the indemnitee through the tort of the indemnitor has been required to act in the protection of the indemnitee's interest by bringing an action against or defending an action by a third person and (b) if that indemnitor was properly notified of the demand to bring the action or provide the defense and did not avail itself of the opportunity to do so, and (c) that the trier of fact determined that the indemnitee was without fault in the principal case which is the basis for the action in indemnity or that the indemnitee had a final judgment entered in his or her favor granting a summary judgment, a nonsuit, or a directed verdict."

Section 1021.6 permits an indemnitee to recover attorney fees incurred in the principal action where that indemnitee is adjudged to be without fault in that action. (*Bear Creek Planning Com. v. Title Ins. & Trust Co.* (1985) 164 Cal.App.3d 1227, 1244, disapproved on other grounds in *Bay Development, Ltd. v. Superior Court* (1990) 50 Cal.3d 1012, 1031-1032 & fn. 12 (*Bay Development*).) It does not create a statutory right to indemnity, but "merely 'permits an indemnitee to recover . . . attorney fees in an implied indemnity action under specified circumstances.' " (*John Hancock Mutual Life Ins. Co. v. Setser* (1996) 42 Cal.App.4th 1524, 1531.) A claim for attorney fees under section 1021.6 thus is "simply a statutory incident" of a "successful common law claim for implied equitable indemnity." (*Id.* at p. 1534.)

the first time on appeal where new theory presents a question of law to be applied to undisputed facts in the record].)

11

A prerequisite of recovering attorney fees under section 1021.6 is a determination that the party seeking fees is a *prevailing* indemnitee: that the party in fact succeed on its claim for implied indemnity against the indemnitor. (See *Uniroyal Chemical Co. v. American Vanguard Corp.* (1988) 203 Cal.App.3d 285, 296 [" 'section 1021.6 read as a whole, clearly applies only to an *indemnitee* who prevails on a claim against an indemnitor' "].) And, "[a] would-be indemnitee may be eligible to recover attorney fees under section 1021.6 even when . . . the indemnitee has been absolved of all liability for the plaintiff's injuries, *so long as the indemnitee demonstrates it would have been entitled to indemnity for any judgment that had been rendered against it.*" (*Bay Development*, *supra*, 50 Cal.3d at p. 1027, italics added.) Thus, to defeat summary judgment on this ground, the Cauzzas were required to demonstrate triable issues of material fact as to whether, had Smelser obtained a judgment against them in her action, they would have been entitled to some form of implied indemnity from District.

The California Supreme Court has explained that there are only two basic types of indemnity: express indemnity (requiring express contractual language establishing one party's duty to save another harmless on the occurrence of specified circumstances) and equitable indemnity. (*Prince v. Pacific Gas & Elec. Co.* (2009) 45 Cal.4th 1151, 1157, 1158.) Implied contractual indemnity is "but a form of equitable indemnity." (*Id*. at p. 1157, fn. 2.) The other form of equitable indemnity, "traditional equitable indemnity," is "indemnity arising from the equities of particular circumstances . . . ." (*Id*. at p. 1157.) Traditional equitable indemnity, the only type of equitable indemnity at issue here, requires no contractual relationship between indemnitor and indemnitee. (*Id*. at p. 1158.)

12

It " 'is premised on a joint legal obligation to another for damages,' but it 'does not invariably follow fault.' " (*Ibid.*) The doctrine is subject to principles pertaining to allocation of fault and comparative equitable apportionment of loss. (*Ibid.*)

"A key restrictive feature of traditional equitable indemnity is that, on matters of substantive law, the doctrine is 'wholly derivative and subject to whatever immunities or other limitations on liability would otherwise be available' against the injured party. [Citations.] This rule 'is often expressed in the shorthand phrase . . . there can be no indemnity without liability.' " (*Prince v. Pacific Gas & Elec. Co.*, *supra*, 45 Cal.4th at pp. 1158-1159; see *Children's Hospital v. Sedgwick* (1996) 45 Cal.App.4th 1780, 1787 ["As against the indemnitee, the indemnitor may invoke any substantive defense to liability that is available against the injured party"].)

As we will explain more fully below, even assuming the Cauzzas could establish that District owed a duty of care to Smelser, the Cauzzas cannot establish District's liability by virtue of the immunity of Education Code section 44808. For those reasons, they are unable to establish the necessary showing for recovery of attorney fees under Code of Civil Procedure section 1021.6., namely, some potential entitlement to implied indemnity from District.

C. *District's Duty of Care to Smelser*

The Cauzzas contend triable issues of material fact exist as to whether on-campus negligence by District employees contributed to Smelser's injury and whether District specifically assumed responsibility for the off-campus float building, precluding any immunity provided by Education Code section 44808. In part, they argue Education

13

Code section 44808 does not provide blanket immunity to District simply because Smelser's injury occurred off campus, particularly where District failed to exercise reasonable care.

Before the question of statutory immunity arises, it is first necessary to establish that District owed Smelser a duty of care. (See *Lackner v. North* (2006) 135 Cal.App.4th 1188, 1204, fn. 8; citing *Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 201-202; *Williams v. State of California* (1983) 34 Cal.3d 18, 22 [emphasizing the impropriety of placing the "immunity cart . . . before the duty horse"].) This inquiry is a question of law. (*J.H. v. Los Angeles Unified School Dist.* (2010) 183 Cal.App.4th 123, 138; *Catsouras v. Department of California Highway Patrol* (2010) 181 Cal.App.4th 856, 876.)

Except as provided by statute, a public entity such as District is not liable for an injury arising out of an act or omission by itself or its employees. (Gov. Code, §§ 811.2 [" 'Public entity' " includes a "district"] 815, subd. (a); *Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 932.) One such statute is Government Code section 815.2, subdivision (a), which provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee." (*Hoff*, at p. 932.) "Through this section, the California Tort Claims Act expressly makes the doctrine of respondeat superior applicable to public employers," and thus District is " 'vicariously liable' " for any injury that one of its employees causes to the same extent as a private employer. (*Ibid.*)

14

Accordingly, " 'a school district is vicariously liable for injuries proximately caused by [the] negligence' of school personnel 'responsible for student supervision.' " (*Ibid.*)

Under these standards, District could be vicariously liable for injuries proximately caused by the negligence of its class advisors, who supervised the students during on-campus meetings held during school hours in connection with their float planning activities. "The law regarding the duty of supervision on school premises is very, very well established. 'It is the duty of the school authorities to supervise at all times the conduct of the children on the school grounds and to enforce those rules and regulations necessary to their protection. [Citations.] The school district is liable for injuries which result from a failure of its officers and employees to use ordinary care in this respect. [Citations.]' [Citation.] 'What is ordinary care depends upon the circumstances of each particular case and is to be determined as a fact with reference to the situation and knowledge of the parties.' " (*J.H. v. Los Angeles Unified School Dist.*, *supra*, 183 Cal.App.4th at pp. 139-140; see *C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 865 ["Ample case authority establishes that school personnel owe students under their supervision a protective duty of ordinary care, for breach of which the school district may be held vicariously liable"].) The existence of a duty of care depends in part on whether the harm to the plaintiff was reasonably foreseeable. (See *Leger v. Stockton Unified School Dist.* (1988) 202 Cal.App.3d 1448, 1459.)

This case does not involve a student injury occurring on school grounds. But, as the Cauzzas correctly point out, the question of a school district's duty does not turn on whether the injury occurs on school grounds. (See *Guerrero*, *supra*, 114 Cal.App.4th

15

264, 270; *Eric M.*, *supra*, 174 Cal.App.4th 285, 294; *Perna v. Conejo Valley Unified School District* (1983) 143 Cal.App.3d 292, 295 [question of fact presented on school district's negligence where teacher kept a 12-year-old student after class, forcing her and her 14-year-old sister to leave school after crossing guard left]; *Calandri v. Ione Unified School Dist.* (1963) 219 Cal.App.2d 542, 549-550 [trial court correctly made a preliminary determination that school district owed a duty of care when a 15-year-old student was injured at home by a toy cannon he made in a school shop class].) They contend the evidence is in dispute as to whether on-campus negligence was committed by District employees. Maintaining the evidence shows District personnel knew "of the danger associated with float night but did nothing about it until after the . . . incident, despite having the obvious ability to do so earlier" and pointing out District "easily solved the problem after the incident by precluding off-campus float construction," the Cauzzas argue it was for the trier of fact to decide whether on-campus negligence by District employees contributed to Smelser's injury on their property.

District's response is that the risk of harm was not foreseeable; that the evidence showed there had been no significant injury to any participant in the float building, and thus nothing to "put a thoughtful person on notice that an adult might attack a student with a baseball bat." According to District, "[t]he injury resulted in a completely unforeseeable attack by an adult—not a student—who was not defending a float or a student class, who attacked with a potentially lethal weapon—[a] baseball bat—not a paint ball gun." It argues there could be no duty upon District under these circumstances.

16

District's assertions about foreseeability are unpersuasive. First, there is no evidence of what exactly caused Smelser's head injury. Second, foreseeability is determined in light of all the circumstances and does not require prior identical or even similar events or injuries. (*M.W. v. Panama Buena Vista Union School Dist.* (2003) 110 Cal.App.4th 508, 519.) " 'It is not necessary to prove that the very injury which occurred must have been foreseeable by the school authorities . . . . Their negligence is established if a reasonably prudent person would foresee that injuries of the same general type would be likely to happen in the absence of [adequate] safeguards.' [Citations.] . . . '[T]he issue of 'foreseeability' does not depend upon the foreseeability of a particular third party's act, but instead focuses on whether the allegedly negligent conduct at issue created a foreseeable risk of a *particular kind of harm*.' " (*M.W. v. Panama Buena Vista Union School Dist.*, at p. 519, quoting in part *Taylor v. Oakland Scavenger Co.* (1941) 17 Cal.2d 594, 600.) "Neither the mere involvement of a third party nor that party's wrongful conduct is sufficient in itself to absolve [a school district] of liability, once a negligent failure to provide adequate supervision is shown." (*Dailey v. Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 750; see also *C.A. v. William S. Hart Union High School Dist.*, *supra*, 53 Cal.4th 861, 870; *J.H. v. Los Angeles Unified Sch. Dist.*, *supra*, 183 Cal.App.4th at p. 144.)

Here, the Cauzzas presented evidence that District's paid class advisors supervised and assisted students during school hours in connection with the District-sponsored homecoming activities, particularly to assist them with respect to their class floats. The evidence is undisputed that Munson and McColl were aware of the float night practice of

17

students "messing" with floats, both visited the Boyd and the Cauzza properties the night before homecoming, and their knowledge extended to the storage of class floats on private property as well as the likelihood of students trespassing on private property in an attempt to vandalize floats stored there with eggs and paintballs guns. The advisors knew at least some students would spend the night on their floats, and it was foreseeable they would take steps to "protect" or defend their floats (Munson in fact advised his students to protect their float). It was foreseeable under the circumstances that a private property owner might respond with some efforts of their own to prevent trespass or property damage. Indeed, District superintendents and board members had been warned by Detective Dalton about the increasingly serious nature of float night activities, the trespassing involved, and the general "escalation" of events. These sorts of facts tend to give rise to District's duty of care to take steps to protect against injuries likely to result from these float night activities.

We need not, however, further discuss the relevant factors underlying the duty of care analysis. (See *C.A. v. William S. Hart Union High School Dist.*, *supra*, 53 Cal.4th at p. 877, fn. 8 [duty of care analysis requires consideration not only of the foreseeability of harm to the plaintiff, but also factors such as " 'the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved' "]; *Titus v. Canyon*

18

*Lake Property Owners Assn.* (2004) 118 Cal.App.4th 906, 911-912.)  Even if we were to conclude District, via its own negligence or the negligence of Munson or McCall, owed Smelser a duty of care under these circumstances, we nevertheless hold the Cauzzas have not demonstrated a triable issue of material fact as to District's immunity from liability under Education Code section 44808.

D. *The Cauzzas' Evidence Does Not Raise Factual Issues as to Whether District Specifically Assumed Responsibility or Liability For Off-Campus Float Building, and Failed to Exercise Reasonable Care Under the Circumstances to Preclude Immunity Under Education Code section 44808*

As pertinent here, Education Code section 44808 provides that District will not be "responsible or in any way liable for the . . . safety of any pupil . . . at any time when such pupil is not on school property" unless District has "undertaken a school-sponsored activity off the premises, has otherwise specifically assumed such responsibility or liability or has failed to exercise reasonable care under the circumstances."  (Ed. Code, § 44808.)  If District engages in "such a specific undertaking," it is liable or responsible for a pupil's safety only where he or she "is or should be under the immediate and direct supervision of an employee of such district or board."[5]  (*Ibid*.)

_____

[5]     In full, Education Code section 44808 states:  "Notwithstanding any other provision of this code, no school district, city or county board of education, county superintendent of schools, or any officer or employee of such district or board shall be responsible or in any way liable for the conduct or safety of any pupil of the public schools at any time when such pupil is not on school property, unless such district, board, or person has undertaken to provide transportation for such pupil to and from the school premises, has undertaken a school-sponsored activity off the premises of such school, has

19

This court addressed Education Code section 44808 in a summary judgment context in *Guerrero*, *supra*, 114 Cal.App.4th 264 and *Eric M.*, *supra*, 174 Cal.App.4th 285. In *Guerrero*, the six-year-old plaintiff was struck by a car while crossing the street in front of her school, approximately 30 minutes after her release from school while she was waiting to be picked up. (*Guerrero*, 114 Cal.App.4th at pp. 266-267.) One of the plaintiff's opposing summary judgment arguments was "that the accident was caused by [the school district's] failure to properly supervise her while on school grounds." (*Id.* at p. 269.) In rejecting that argument, the *Guerrero* majority explained that under Education Code section 44808, "[the school district] would not be liable for injuries off campus and after school unless they were the result of the District's negligence occurring on school grounds or were the result of some specific undertaking by the District, which was then performed in a negligent manner." (*Guerrero*, at p. 269.) It addressed cases in which a duty had been found relative to an off-campus injury, concluding that "[e]ach of the cases in which schools have been held to have a duty of care for the safety of students off campus and after school arises from circumstances where school personnel did something on campus or failed in their supervisory duties on campus. . . . [¶] [Plaintiff's] case does not present any basis for constructing a duty to exercise reasonable care for her safety after she was released from school. Although she argues the District failed in its duty to supervise her while on school grounds, she does not articulate what

otherwise specifically assumed such responsibility or liability or has failed to exercise reasonable care under the circumstances. [¶] In the event of such a specific undertaking, the district, board, or person shall be liable or responsible for the conduct or safety of any pupil only while such pupil is or should be under the immediate and direct supervision of an employee of such district or board."

20

the school's duty should have been or what action the school should have taken.  No evidence was presented in the summary judgment proceeding that the District or the school supervised the public street where [the plaintiff] and her siblings waited to be picked up.  Nor are there any facts presented to show how the on-campus conduct of the school related to the off-campus injury." (*Id.* at p. 270.)  It found "no factual connection to [the plaintiff's] release from school in the company of her siblings and her unfortunate accident after she was released from school." (*Ibid.*)  Accordingly, in *Guerrero*, the majority held the district in that case owed no duty of care to the plaintiff under the circumstances.

Both *Guerrero* and *Eric M.* further observed that any failure to exercise reasonable care by a school district must be tied to one of the mentioned undertakings in Education Code section 44808.  " 'To construe [the failure-to-exercise-reasonable-care-under-the-circumstances language of Education Code section 44808] as an independent basis for liability would be to say, absurdly:  A district is never liable in negligence unless it acts negligently.  Also, the breach must be of a duty, a duty created through one of the undertakings. [Citation.]  "The 'reasonable care' phrase enunciates a standard of care and as such cannot exist in a vacuum; in the absence of a duty to which it applies, the phrase is meaningless." ' [Citations.]  [¶]  'In essence, the section grants a district immunity unless a student was (or should have been) directly supervised during a specified undertaking.' " (*Guerrero*, *supra*, 114 Cal.App.4th at pp. 271-272, quoting *Wolfe v. Dublin Unified School District* (1997) 56 Cal.App.4th 126, 129; see also *Eric M.*, *supra*, 174 Cal.App.4th at p. 295, fn. 4.)

21

On appeal, the Cauzzas do not argue (as they did in their opposing papers below) that their evidence demonstrated District undertook a "school-sponsored activity" off the premises in which students were or should have been under the immediate and direct supervision of a District employee, which is one source of a duty of care on District's part.[6] (See *Patterson v. Sacramento City Unified School Dist.* (2007) 155 Cal.App.4th 821, 830.) Instead, the Cauzzas contend the evidence raises triable issues as to whether District specifically assumed responsibility for off-campus float building, and failed to exercise reasonable care under the circumstances. They point to McHugh's apology to students the next day, characterizing it as evidence that McHugh "believed his failure to properly ensure students were taught appropriate responsibility and behavior played a role in Smelser's injury." They also point to District's decision to change the location of float building and hire security guards to prevent incidents like Smelser's.

District does not directly respond to this claim, but instead argues the injuries did not occur at a school-sponsored activity; that neither vandalizing a float, trespassing, nor off-campus construction were part of the school curriculum. District also argues there is no evidence (a) it sponsored Smelser's actions in trespassing and vandalizing the float; (b) it required class advisors to spend float night supervising the floats; (c) class advisors ever spent the night with a float; or (d) parents expected the advisors to spend the night

---

[6]     "For purposes of sections 44808 . . . a ' " 'school-sponsored activity' " ' is ' "one that requires attendance and for which attendance credit may be given . . . ." ' [Citation.] '[T]he test is not really whether the student's participation [is] voluntary or not, but whether the off-premises activity [is] part of the school curriculum.' " (*Patterson v. Sacramento City Unified School Dist.*, *supra*, 155 Cal.App.4th at p. 830.)

with the floats. District maintains that at the time of her injury, Smelser was not, nor should she have been, under the direct supervision of District employees.

On summary judgment review, we decide whether there is evidence from which a jury could infer or conclude District directly or specifically assumed responsibility for student safety relating to off-campus float-building activities, and whether there are triable issues as to whether it failed to exercise reasonable care *with respect to that specifically assumed activity*. On this point, we cannot say the Cauzzas' evidence gives rise to a jury question. The fact District had class advisors assist the students with their float decision making, or even the fact the advisors allowed students to store the floats off campus during float night, does not constitute District's *specific assumption* of responsibility or liability for the students' off-campus conduct in building, vandalizing, or protecting, their class floats. Though the class advisors assisted in float construction, they were not required to do so, and they did not stay to protect the floats. (See *Hoff v. Vacaville Unified School Dist*., *supra*, 19 Cal.4th at p. 940 [evidence that school district never supervised overflow parking lot where accident occurred at the end of the school day "unequivocally establishe[d] that the District did *not* specifically assume any responsibility to supervise student driving in the overflow lot"; the school district's decision to supervise the school's main lot could not be expanded to an assumption of a general duty to supervise all student driving at the school].)

In *Cerna v. City of Oakland*, *supra*, 161 Cal.App.4th 1340 (*Cerna*), the Court of Appeal upheld a summary judgment in a school district's favor, after considering whether the District in that case had specifically assumed responsibility to ensure safe school

23

access in a situation where the plaintiff children were either killed or injured while they crossed a city street on their way to school. (*Id*. at pp. 1344-1345, 1358-1359.) The plaintiffs, who were hit by an unlicensed motorist, had argued the district specifically assumed responsibility for their safety by (1) preparing an environmental impact report (EIR) analyzing traffic safety impacts; (2) adopting a resolution finding the site selection standards for the school were met, including standards for pedestrian safety; and (3) telling parents it would take steps to make it safe for walking to and from the school. (*Id*. at p. 1358.) The appellate court held none of these actions constituted a specific assumption of responsibility under Education Code section 44808. (*Cerna*, at p. 1358.)

Specifically, *Cerna* explained that the EIR had a specialized purpose for long term environmental protection, and, reviewing the EIR's factual conclusions as to the generation of "increased pedestrian activity" on the street and the safety of a *different* intersection closest to the school having crossing signals, observed it contained nothing suggesting the district had assumed any responsibility for pedestrian safety at the subject intersection. (*Cerna*, *supra*, 161 Cal.App.4th at pp. 1358-1359.) With regard to the district's resolution, the Court of Appeal observed the district had found the school project met statutory and regulatory site selection standards, and had stated it was on streets with a "heavy traffic pattern" but that a mitigation plan had been developed that complied with a pedestrian safety manual edition of the California Department of Transportation. (*Id*. at p. 1359.) However, the *Cerna* court held the manual did not create mandatory duties but only provided advisory guidelines that recommended standards and procedures aimed at bringing about desirable safety conditions. (*Ibid*.)

24

Thus, the district's adoption of those guidelines provided no basis to conclude the district specifically assumed liability for student conduct and safety. (*Id*. at p. 1360.)

Finally, the *Cerna* court rejected the argument that the district assumed responsibility for student safety by statements made by unidentified school representatives that " 'various things would be done to make it safe for students to walk to and from School,' " including installation of traffic lights or stop signs, crossing guards, and presence of police officers. (*Cerna*, *supra*, 161 Cal.App.4th at p. 1360.) The Court of Appeal found the alleged representations "too general and vague to constitute a specific assumption of liability under [Education Code] section 44808." (*Cerna*, at p. 1360.) That circumstance, combined with the fact crossing guards were a municipal obligation outside the responsibility of school districts providing "essentially a police function," and the fact the lack of a crossing guard was not a proximate cause of the injuries suffered, compelled the court to affirm the summary judgment. (*Id*. at pp. 1360-1361.)

The evidence presented by the Cauzzas here does not come close to the type of actions or statements of the school district in *Cerna*, which were held insufficient to defeat summary judgment on a claim it specifically assumed liability for student safety under Education Code section 44808. McHugh's apology to students, District's decision to relocate float building after 2007 (assuming the decision is admissible on the issue of District's control, see Evid. Code, § 1151; Cal. Law Revision Com. com., 29B pt. 3B West's Ann. Evid. Code, foll. § 1151, p. 450; *Ault v. International Harvester Co.* (1974) 13 Cal.3d 113, 119), and District's provision of class advisors who were aware of float

25

night activities, neither separately nor collectively raise a triable issue of material fact as to whether District specifically assumed responsibility or liability for student safety during off-campus float-building activities. For the foregoing reasons, we affirm the summary judgment.

II. *Prevailing Party Determination under Code of Civil Procedure Section 1032*

The Cauzzas contend the trial court erred by ruling it was without discretion to deny District prevailing party costs under section 1032, subdivision (a). They maintain as a matter of statutory interpretation, the trial court possessed discretion to decide in unusual circumstances that a party may not meet the definition of a prevailing party as in the present case, where the Cauzzas, who were ultimately successful in Smelser's action against them, were compelled by the Government Claims Act to initiate indemnity claims against District before they obtained a favorable liability determination and then summary judgment in the underlying action.

District responds that it falls squarely within section 1032, subdivision (a)(4), namely, it qualifies as a "cross-defendant in whose favor a dismissal of the cross-complaint is entered," entitling it to litigation costs as a matter of right. It further argues that even assuming the trial court retained discretion to award costs, it exercised its discretion by naming District as the prevailing party as part of the judgment without objection from the Cauzzas, who have not shown how the court's discretion was abused. Finally, District maintains nothing compelled the Cauzzas to countersue the District until such time they were found liable; it was not a compulsory cross-complaint.

26

A. *Standard of Review*

"Generally, a trial court's determination that a litigant is a prevailing party, along with its award of fees and costs, is reviewed for abuse of discretion." (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.) When an issue involves interpretation of a statute, however, it becomes a question of law subject to de novo review. (*Ibid.*) "In interpreting a statute, our primary goal is to determine and give effect to the underlying purpose of the law. [Citation.] 'Our first step is to scrutinize the actual words of the statute, giving them a plain and common-sense meaning.' [Citation.] ' "If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." ' [Citation.] In other words, we are not free to 'give the words an effect different from the plain and direct import of the terms used.' " (*Ibid.*)

B. *Section 1032 and Its Definition of Prevailing Party*

Section 1032 provides in part:

"(a) As used in this section, unless the context clearly requires otherwise:

"(1) 'Complaint' includes a cross-complaint.

"(2) 'Defendant' includes a cross-defendant or a person against whom a complaint is filed.

"(3) 'Plaintiff' includes a cross-complainant or a party who files a complaint in intervention.

"(4) 'Prevailing party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor

27

defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant.  When any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under Section 1034.

"(b)  Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."

C. *District is a Prevailing Party as a Matter of Right Under Section 1032, Subdivision (a)(4)*

The Cauzzas contend that the phrase "unless the context clearly requires otherwise" in section 1032, subdivision (a) plainly "give[s] the trial court some discretion in prevailing party determinations in other than normal circumstances even where, like here, one party meets one of the specified definitions of a prevailing party."  The Cauzzas assert that phrase provides a limitation on the right to recover costs, citing *Sears v. Baccaglio* (1998) 60 Cal.App.4th 1136.  They seek to distinguish the authority on which the trial court relied, *Great Western Bank v. Converse Consultants, Inc.*, *supra*, 58 Cal.App.4th 609 (characterized as dicta and distinguished on other grounds in *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1337-1338) and authority cited by *Great Western*, *Crib Retaining Walls, Inc. v. NBS/Lowry, Inc.* (1996) 47 Cal.App.4th 886, as failing to consider the quoted phrase from section 1032, subdivision (a).

28

Our reading of the plain language of section 1032 as a whole does not reflect a grant of trial court discretion where a defendant meets one of the "prevailing party" definitions set out in section 1032, subdivision (a)(4). The Cauzzas' interpretation would contradict the Legislature's express and unambiguous declaration in subdivision (b) of section 1032 that a prevailing party—defined by the four subdivision (a)(4) categories—is entitled "as a matter of right to recover costs in any action or proceeding." (See *Goodman v. Lozano*, *supra*, 47 Cal.4th at p. 1333; *Cussler v. Crusader Entertainment* (2012) 212 Cal.App.4th 356, 371-372; *Zintel Holdings, LLC v. McLean* (2012) 209 Cal.App.4th 431, 441; *Michell v. Olick* (1996) 49 Cal.App.4th 1194, 1197-1198 [prevailing party as defined by the four categories of section 1032, subdivision (a)(4) is entitled to costs as a matter of right, and the trial court has no discretion to order each party to bear his or her own costs]; *Crib Retaining Walls, Inc. v. NBS Lowry, Inc.* (1996) 47 Cal.App.4th 886, 890.)

The sole question is whether District comes within one of the four categories of prevailing party because it succeeded in defeating the Cauzzas' cross-complaint by summary judgment. Applying the statutory definition that a defendant includes a cross-defendant as District was here, it is plain that District is a "defendant as against those plaintiffs who do not recover any relief against that defendant." (§ 1032, subd. (a)(4).) The Cauzzas' arguments were rejected in *Cussler v. Crusader Entertainment*, *supra*, 212 Cal.App.4th 356, which explained that section 1032 expressly provides the court with discretion to determine the prevailing party only "under two circumstances: (1) when any

party 'recovers other than monetary relief' and (2) 'in situations other than as specified.' " (*Cussler*, at p. 372.) In the present case, neither party recovered nonmonetary relief, and the circumstances present one of those "specified" by section 1032, subdivision (a)(4). (*Cussler*, at p. 372.) "Nothing in *Sears* [*v. Baccaglio*, *supra*, 60 Cal.App.4th 1136] . . . states that the trial court has discretion to deny costs under the circumstances presented here." (*Cussler*, at p. 372.) Because the trial court did not have discretion to deny District costs to which it was entitled as a matter of right, we affirm the postjudgment order awarding costs.

## DISPOSITION

The judgment and postjudgment order are affirmed.


O'ROURKE, J.

WE CONCUR:

McDONALD, Acting P. J.

McINTYRE, J.